## THE WEST JERSEY RAILROAD COMPANY

### *v.*

## THE CAMDEN, GLOUCESTER AND WOODBURY RAILWAY COMPANY.

1. A street railway constructed in a highway under authority of law, with a road-bed which will admit of the free use of the highway by all other lawful means, operated by cars patterned after the style and size of cars ordinarily in use by horse railways, the motive power of which is electricity supplied by means of overhead wires supported by poles planted in the sidewalks, immediately within the curbs, is but a modification of the public use to which the highway was originally devoted, and is not an additional burden on the land for which compensation may be required.

West Jersey Railroad Co. *v.* Camden &c. Railway Co.

2. Whether there may not be methods of operating an electric railway resorted to which will be within the objection that it constitutes an additional servitude for which compensation must be made, *quære.*

3. And whether serious injury to improvements which the abutting landowner may make upon and under sidewalks by the planting of poles to support the overhead wires will not be within like objection, *quære.*

4. Equity will not enjoin an unauthorized obstruction in a public highway, at the instance of a private person, corporate or natural, who does not suffer some special damage from it, differing in kind from the damage which such person sustains merely as a member of the community; and within this rule, a railroad company, though it does public service, stands substantially upon the footing of a private individual.

5. Such special damage is not suffered by a steam railway company which has merely the right to operate its road across the highway at grade, through the establishment in the highway of a street railway, the motive power of which is electricity supplied by means of wires elevated a sufficient height to admit the free passage of the cars of the steam road thereunder.

---

On motion to dissolve injunction. Heard on bill, answer and accompanying affidavits.

*Mr. Lewis Starr* and *Mr. David J. Pancoast,* for the motion.

*Mr. Samuel H. Grey, contra.*

THE CHANCELLOR.

The complainant, the West Jersey Railroad Company, was constructed in virtue of the authority conferred by its charter, approved February 5th, 1853 (*P. L. of 1853 p. 39*), through what is now the city of Woodbury, in the county of Gloucester, crossing, at grade, a public road now known as Cooper street, in that city.

The complainant's charter did not give it express authority to construct its railroad across that highway. The authority for that purpose was had by implication from the charter's establishment of the termini of the road, to join which it was necessary to construct the proposed railway across existing highways.

Immediately south of Cooper street the complainant secured a site for a depot and car-yard, which bounds some two hundred

feet or more upon the southerly side of the street, and upon which a railway station has been erected.

The defendant, the Camden, Gloucester and Woodbury Railway Company, was incorporated for the purpose of constructing, maintaining and operating a street railway for the public use, under the provisions of the statute entitled "An act to authorize the formation of traction companies for the construction and operation of street railways or railroads operated as street railways, and to regulate the same," approved March 14th, 1893 (*P. L. of 1893 p. 302*), and is now engaged in the construction of a street railway through Cooper street, which it intends to operate by means of electric motors supplied with electricity from overhead wires supported by poles planted in the outer edge of the sidewalks of the street, just within the curb, a suitable distance apart. That railway will pass the complainant's depot and cross its tracks which are laid over Cooper street. Four of the poles will be erected upon the complainant's land, within the lines of Cooper street, but in such position that, so far as now appears, they will not interfere with the passage of light or air from the street or hinder the complainant's free access to and from its property. Nor will they do appreciable injury to the sidewalks or works of any kind which the complainant has constructed in Cooper street. They will not interfere with the complainant's railway tracks which cross Cooper street. The overhead wires will be erected twenty feet above the surface of the highway and will not obstruct the passage of the complainant's trains.

It does not appear that the defendant will operate its railway with cars of unusual size, or in trains or in any manner not now customary in the operation of street railways where the motive power is electricity supplied by means of overhead wires, according to that which is known as the trolley system.

The complainant seeks to sustain the injunction it has obtained as a protection against the invasion of its property rights, which, under the constitution, cannot be appropriated by the street railway without authority of law and upon compensation.

The rights which it deems to be threatened arise from its

*status—first,* as the owner of the fee of land occupied by Cooper street, and *second,* as the owner of a steam railroad authorized to cross that street.

The ownership of the fee in the soil in the public street is subordinate to the public use thereof for the purposes of a highway. That use is an easement of passage by everyone over the highway and every part of it, by any means which will not substantially and permanently exclude anyone from the enjoyment of that common right. The means by which such use is to be lawfully had cannot be particularly defined, because, as suggested by Vice-Chancellor Van Fleet, in *Halsey* v. *Rapid Transit Street Railway Co., 2 Dick. Ch. Rep. 380,* they will be as numerous as the improvements of the age and new wants, arising out of an increase in population or an enlargement of business, may render necessary.

It has been repeatedly declared by the courts of this state that the use of the public easement of a highway by a horse railway is a lawful servitude, and therefore is not a new burden of the soil for which compensation must be made to the owner, the reason being that it is a convenient and beneficial means of passage to the public, which does not prevent the accustomed use of the highway by others. On the contrary, it so accommodates and facilitates that use that it more than compensates for the slight inconvenience that its rails and the necessity of permitting it to have the right of way over ordinary vehicles occasions. It is a means of use which stands in marked distinction from the steam railway (though the difference is only in degree), whose raised rails, noise, speed and accompanying danger have led the courts to declare it to be incompatible with the common use of the highway, and therefore an additional servitude, for which the owner of the soil must be compensated. *Citizens' Coach Co.* v. *Camden Horse Railroad Co., 6 Stew. Eq. 267.*

The electric street railway, as now ordinarily in use by cars patterned in style and size after the horse railway car, stands, as a means of using a highway, in degree between the horse and the steam railways. As in case of the horse railway, its rails do not materially interfere with the ordinary use of the highway.

While its motive power, as usually applied, exceeds in capacity that of the horse railway, and the noise and danger attending its operation are greater, they do not extend to the power, noise and danger of the steam locomotive, with its attendant train of cars. Its capacity for speed is great, but that is subject to municipal control. I do not now deal with future possibilities in the management of the electric railway. It may readily be conceived that the greater motive power it possesses may sometime induce an attempt to use the highways by trains of cars or by rails and cars of such character and size as to practically work all evils of the steam railway, and that there will be inaugurated systems of through cars, in furtherance of rapid transit between distant points, which will crowd and burden the street to the inconvenience and obstruction of its other uses, without any accommodation to the ordinary local use of the street, and thus the degree of incompatibility with the common use may be so raised that the courts will be obliged to distinguish between methods of use and declare against some as creating an additional servitude of the land occupied by the highway, the crucial test for that distinction being whether the use contemplated is compatible with the purpose for which the common highway was originally designed. But such use is not, at present, the normal operation of the electric street railway, and it is not claimed that any such abnormal conditions exist in the case under consideration.

Basing their conclusions upon the contemplation of the customary use of the electric street railway, the courts have regarded that, as operated by the trolley system, it is not an additional burden upon the soil in the common highway. *Halsey* v. *Rapid Transit Street Railway Co.*, *supra*; *Taggart* v. *Newport Street Railway Co., 16 R. I. 668*; *Detroit City Railway Co.* v. *Mills, 85 Mich. 634*; *Lockhart* v. *Craig Street Railway Co., 139 Pa. St. 419*; *Hudson River Telephone Co.* v. *Watervliet Turnpike and Railroad Co., 135 N. Y. 393, 407*; *Mount Adams and Eden Park Inclined Railway Co.* v. *Winslow, 3 Ohio C. C. 425*. The first cited of these cases is the utterance of this court.

But it is a work of supererogation, at this time, to treat this question as more than an unsettled and doubtful one. It is at

least that. The present application is to dissolve a preliminary injunction, which will not be suffered to stand in the protection of the complainant from a use of the street by the defendant, which may or may not invade its property rights. Unless the invasion be clear the injunction must be dissolved. *Citizens' Coach Co.* v. *Camden Horse Railroad Co., supra; Hagerty* v. *Lee, 18 Stew. Eq. 255.*

But it is urged that the poles, planted within the curb lines of the sidewalk, to support the overhead wires, are at least an invasion of private property.

The sidewalks are parts of the highway, subject to the public easement. They are set apart, principally, for use by pedestrians. They are defined by the curb lines, beyond which vehicles may not go, and at which, experience has taught, lamp, hitching and awning-posts, shade-trees and the like may be planted without inconvenience either to pedestrians or vehicles. At that place the lamp-post, which provides a means to light the highway, and thus facilitate its use, has not been regarded as an additional burden upon the soil, and, upon similar consideration, it becomes difficult to perceive why the poles, which accommodate a convenient use of the highway by a street railway, are to be regarded differently. It is to be remembered, however, that the abutting land-owner ordinarily has something more of property than the ownership of the mere fee of the soil, in the sidewalk. By the laws and usages of the state, the sidewalk has, in a degree, been regarded as an appendage to and a part of the premises abutting upon it, and as so essential to the beneficial use of such premises that its improvement is properly imposed upon the owner of the abutting land. *Halsey* v. *Rapid Transit Street Railway Co., supra; Agens* v. *Newark, 8 Vr. 415; Weller* v. *McCormick, 18 Vr. 397.* It follows that, if such improvement of the sidewalk or constructions under it, which the land-owner shall lawfully make in pursuance of his duty to the public or for his own private convenience, be expensive in character, so that substantial damage will result to him from the planting of the trolley poles, a serious question will arise whether there will not be a taking of his property for which he must be compen-

West Jersey Railroad Co. *v.* Camden &c. Railway Co.

sated, and a threatened invasion sufficiently serious to induce this court's interference. But that question is not presented in this case. It does not appear that the complainant has improved the sidewalk in front of its property, so that the planting of the poles will substantially or seriously damage such improvement, or, indeed, that it has improved them at all.

Another consideration borne in mind is that the abutting property-owner has the right of ingress to and egress from his property by means of the street, in a manner which will accord with the lawful purposes to which he devotes his property, and also to a reasonably available way through the highway to the several stories of his building in cases of emergencies like fire. He also has the right to light and air from the highway. And he cannot be deprived of either of these rights by the placing of poles or erection of wires without compensation being made to him. *Paterson Railway Co.* v. *Grundy, 6 Dick. Ch. Rep. 213, 223.* No question touching these rights is presented at this time.

Upon the subject of the rights thus far considered, the supreme court of this state, in the recent case of *State, Roebling, pros.,* v. *Board of Public Works of the City of Trenton, 29 Atl. Rep. 149,* which was presented in shape of an application to vacate the stay of proceedings incident to the issuance of a writ of *certiorari* for the review of an ordinance purporting to grant the right to erect a trolley road in front of the prosecutors, in granting the motion declared as follows :

" 1. It is doubtful whether the prosecutors, as abutting owners, have in the street any right which is violated by the erection and maintenance of trolley poles and wires in front of their premises, under legislative authority."

Passing to the *status* of the complainant as the owner of the railroad authorized to cross the street, I there also fail to find an invasion of any right.

Its right to cross Cooper street is precisely that which was considered by Vice-Chancellor Van Fleet, in *Lehigh Valley Railroad Co.* v. *The Orange Water Co., 15 Stew. Eq. 205,* where he said : " Where a right to cross or occupy a public highway is granted by implication, the corporation can occupy only so

much of the public easement as may be reasonably necessary to enable them to accomplish the purposes for which they were, created. Beyond this they cannot go" &c. The pre-existing public right and convenience of the highway emphasizes the util-ity of this rule. *Township of Raritan* v. *Port Reading Railroad Co., 4 Dick. Ch. Rep. 11, 13.* The exercise of the right to cross does not of necessity exclude the public from the enjoyment of the highway at the point of crossing, further than to permit the lawful operation of the railroad. The high rate of speed and the dangerous character of the trains run over the crossing necessitate that, in the operation of its railroad, the complainant shall have the right of way, to be exercised in accordance with, the requirements of law, and imposes the duty upon the public in the use of the highway, as the railroad crossing is approached, to stop, if necessary in the exercise of due care, look and listen, in order that the right of the railroad may be safely accorded to it. But there is nothing in the right which otherwise limits the use of the highway by the public or restricts the increase of the volume of that use, either in the manner originally exercised or through conveniences which invention may from time to time provide. It follows from the conclusion that the use of the street by the electric car, as it is now usually operated, is within the purposes for which the highway was created, that such car is not to be excluded from the point in that highway where the, railroad may cross it. It, like other passers in the street, must conform with the requirements which the railroad imposes— stopping, if necessary, looking, listening and yielding the right of way.

Nor do I perceive any tenable objection to the suspension of the trolley wire over the railroad crossing at a sufficient height. In the present instance it is not suggested that the elevation intended will be insufficient to permit the proper operation of the complainant's road.

It is insisted that the defendant has not strictly complied with, the statute to obtain the right to lay its rails and operate its cars in Cooper street.

In absence of any attempt upon the part of the defendant to

take property of the complainant for its uses, this objection, if well founded, is without force. It goes merely to show that the defendant's work will be a public nuisance. But it does not exhibit a nuisance against which the complainant may appeal to this court.

If that which the defendant proposes to do will not work some special damage to the complainant, differing in kind from the damage which the complainant will suffer in common with all other members of the community, it has no standing to ask for injunction merely because the defendant proceeds *ultra vires*. Remedies to restrain, abate or punish a public nuisance are to be invoked by the public officials who are charged with duty in that respect (*Township of Raritan* v. *Port Reading Railroad Co., supra*), and not a mere volunteer who is without special cause of complaint. *Van Wagenen* v. *Cooney, 18 Stew. Eq. 25*.

The injunction will be dissolved, with costs.