GERTRUDE GARVEY AND WILLIAM GARVEY, PLAINTIFFS-APPELLANTS, v. PUBLIC SERVICE CO-ORDINATED TRANSPORT AND PUBLIC SERVICE ELECTRIC AND GAS COMPANY, DEFENDANTS-RESPONDENTS.

Submitted February term, 1935—Decided May 17, 1935.

For the appellants, *Joseph B. Schwartz.*

For the respondents, *Henry H. Fryling* and *Harold S. Dorgeval.*

The opinion of the court was delivered by

HEHER, J.    There was a judgment of nonsuit in this action to recover damages for injuries claimed to have been tortiously inflicted when appellant Gertrude Garvey, on November 12th, 1931, between eleven-fifteen and eleven-thirty P. M., lost her footing and fell to the sidewalk, at or near the corner of Smith and State streets, in the city of Perth Amboy, as a result of stepping into a hole in the sidewalk, of which she was unaware, while proceeding toward a passenger-carrying motor bus.    Her husband joined *per quod.*

The gravamen of the complaint against the Public Service Co-ordinated Transport, the operator of a motor bus line along the adjoining highway, was the stoppage of one of its buses (the one which Gertrude intended to board, so she testified) at an unsafe place, and the failure to warn her

of "an impending danger," and to take "precautions to protect her against injury." The negligence charged against the co-defendant, Public Service Electric and Gas Company, was the failure "to fill in the hole caused by the removal" of a pole theretofore maintained by it on the sidewalk, and to take "such other precautions as were reasonably necessary to protect the plaintiff against injury and damage."

The nonsuit in favor of the Transport was proper. Appellants maintain that this defendant was negligent in the selection of this place of danger for the "taking on of passengers;" and reliance is placed upon the line of cases which hold that it is the duty of such a common carrier of passengers to exercise reasonable care to see that the place selected for the plaintiff's discharge is a safe one for that purpose. *Pabst* v. *Public Service Railway Co.*, 104 *N. J. L.* 537; *Malzer* v. *Koll Transportation Co.*, 108 *Id.* 296. The principle enunciated in these cases is obviously not apposite here. The prospective bus passenger was moving along the sidewalk toward the standing bus when the accident befell her; and there was, in this bare situation, no basis for an inference of negligence on the part of the common carrier. And there was no other evidence which would give rise to such an inference. It indisputably appeared that this was a bus stop established by municipal ordinance. It was selected by the municipality, not by the common carrier; and it was the latter's duty to conform to the ordinance, although it was required, in so doing, to exercise that degree of care which would be reasonable under the circumstances. There was, however, no evidence reasonably tending to show a breach of this duty.

But there was no justification for the nonsuit in favor of the co-defendant. As to this defendant, there was evidence tending to establish the following matters of fact: In 1928, 1929, or 1930 (the witnesses were unable to be more definite), the electric company removed a wooden pole planted in the sidewalk, and maintained by it to support electric wires. The wires were placed underground. It was "cut off or sawed off; it was not dug out." The butt remained in the ground. It is reasonably inferable that this course was taken

to avoid damage to and replacement of the surrounding pavement. The pole was between fourteen and eighteen inches in diameter; and there was evidence to justify the inference that the resulting condition was a hole in the pavement which continued until the accident in question   Joseph Curtis, a dentist who maintained his establishment in the abutting building, testified: *"Q. Will you tell us whether or not there are any holes along that bus stop? A. There was one there——— Q. In November, 1931? A. Yes, there was one there until this spring. Q. There was one there until this spring? A. Yes. Q. Do you know how long that hole had existed there? A. I would say—I am just guessing—about, from around 1928."* Counsel for this respondent points to the testimony of a police officer, Irving Franklin, that while, on the night of the accident, the hole was six inches deep and contained cinders, it was not in that condition prior to that day. He testified: *"Q. Did you ever notice this before? A. It was above the sidewalk—it was hard before. Q. It was hard before? A. Before this occasion, yes, sir. Q. You never noticed it in this condition? A. Not in this condition before."* Manifestly, an issue of fact arose out of this divergence in the evidence adduced by appellants. Moreover, this officer testified that he was summoned to the scene of the accident shortly after it occurred. He found the injured plaintiff there; and, in the performance of his duties, he investigated to determine the cause of the accident, with the following result: *"Q. Do you know how deep it [the hole] was? A. I should judge about six inches, and there was cinder there. If you stuck your foot in, as I did, after, you would sink another six inches into it. Q. In the cinder? A. Yes."* It is reasonably inferable from this testimony that the hole had been deepened and its bottom resistance substantially lessened by the operation of nature's process of decay. This was a circumstance which the electric company should have reasonably apprehended when it permitted the stump of the pole to remain in the ground. Its removal would have been a more expensive operation; but economic management does not justify the creation of danger to those lawfully using the highway.

Factually, the instant case is readily distinguishable from *Ford* v. *Jersey Central Power and Light Co.,* 111 *N. J. L.* 112, relied upon by this respondent. There the fall was due to an alleged "declivity in the gravel adjoining the sidewalk, and a slight break in the cemented portion of the sidewalk;" and, as pointed out by Mr. Justice Bodine, the ground of the decision was that there was nothing to show "when the declivity occurred, or that it was due to the failure to properly fill the place where the pole had stood; no witness was called to describe the condition of the place immediately after the completion of the removal or what the condition had been during the intervening years."

Liability here is sustainable also on the theory of a nuisance created in the public highway. As was said in *Durant* v. *Palmer,* 29 *N. J. L.* 544: "The street, and every part of it, by force of the common law, is so far dedicated to the public that any act or obstruction that unnecessarily incommodes or impedes its lawful use by the public is a nuisance. The traveling public have a right to suppose that there is no dangerous impediment or pitfall in any part of it, without a light placed to give warning of it or a suitable railing to protect from it." See, also, *Braelow* v. *Klein,* 100 *Id.* 156.

At the common law, an action lies against him who creates a nuisance, and likewise against him who continues a nuisance created by another. *Staple* v. *Spring,* 10 *Mass.* 77. See, also, *Simmons* v. *Everson,* 124 *N. Y.* 319; 26 *N. E. Rep.* 911; 20 *R. C. L.* 397. One is liable for a nuisance on the ground either that he purposely or negligently created it, or that he continues it. *Cooley Torts* (*4th ed.*), § 445. The creator of a nuisance puts it in the power of others to continue it. *Clancy* v. *Byrne,* 56 *N. Y.* 129. See, also, *Morris Canal and Banking Co.* v. *Ryerson,* 27 *N. J. L.* 457. In the case of *Rosewell* v. *Prior, Salk.* 459; 12 *Mod.* 639, which was an action against one who erected an obstruction to the ancient lights of the plaintiff, and then aliened, Lord Holt laid down the rule that "it is a fundamental principle in law and reason, that he that does the first wrong shall answer for all consequential damages; and here the original erection does influence the continuance, and it remains a

continuance from the very erection, and by the erection, till it be abated." And in *Thompson* v. *Gibson, 7 M. & W.* 456, where the creator of the nuisance averred that he could not remove it without being guilty of a trespass, Baron Parke declared: "But that is a consequence of their own original wrong; and they cannot be permitted to excuse themselves from paying damages for the injury it causes, by showing their inability to remove it, without exposing themselves to another action." See, also, *Cooley Torts,* § 445.

It is elementary that, on a motion of this character, all the evidence which supports the view of the party against whom the motion is made must be accepted as true, and every reasonable inference in his favor is to be indulged. Where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury. *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.,* 111 *N. J. L.* 487; *Lipschitz* v. *New York and New Jersey Produce Corp., Ibid.* 392. So tested, this nonsuit was erroneous.

The judgment in favor of the Public Service Electric and Gas Company is reversed, and the judgment in favor of the Public Service Co-ordinated Transport is affirmed; and the cause is remanded for further proceedings not inconsistent with this opinion.

Garvey v. Public Service Electric and Gas Co.—

*For affirmance*—PARKER, LLOYD, KAYS, WELLS, JJ. 4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, HETFIELD, DEAR, JJ. 10.

Garvey v. Public Service Co-ordinated Transport—

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.