82 N.J. Super. 416 (1964)
197 A.2d 880
WALTER HARTYE, PLAINTIFF-APPELLANT,
v.
GRAND PROPERTIES, INC., A CORPORATION, AND MAYBURN KNITTING MILLS CORP., A CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1963.
Decided March 2, 1964.
*417 Before Judges GAULKIN, FOLEY and LEWIS.
*418 Mr. Samuel L. Marciano argued the cause for appellant (Messrs. Florio, Dunn, Marciano & Lypinski, attorneys).
Mr. Charles E. Howell argued the cause for respondent Grand Properties, Inc.
Mr. Robert E. Tarleton argued the cause for respondent Mayburn Knitting Mills Corp. (Messrs. Beggans & Keale, attorneys, Mr. James P. Beggans, of counsel).
The opinion of the court was delivered by FOLEY, J.A.D.
On December 4, 1960 plaintiff, while walking on a public sidewalk abutting premises owned by defendant Grand Properties Inc. (Grand), and occupied by its tenant, Mayburn Knitting Mills Corp. (Mayburn), stepped into a hole in the sidewalk, fell, and sustained personal injuries. As a result he brought this action against Grand and Mayburn alleging that his injuries were "proximately caused by the negligence of the defendants or either of them, * * * and by reason of the creation or adoption and maintenance of a nuisance by the defendants or either of them, and by reason of the defective and substandard condition of the sidewalk * * * all of which the defendants, or either of them, knew or should have known presented an unreasonable risk of harm to the plaintiff."
The case was tried in the Law Division with a jury. At the conclusion of the evidence the trial court granted Mayburn's motion for an involuntary dismissal and reserved decision on a similar motion made in behalf of Grand, pending Grand's motion for judgment n.o.v. under R.R. 4:51-2 in the event of a verdict adverse to it. The jury awarded damages to the plaintiff, whereupon Grand moved for judgment n.o.v. The motion was granted. Plaintiff now appeals from the judgments entered in favor of each of the defendants.
Grand acquired the premises, a factory building, surrounded on all four sides by a public sidewalk, from the Continental Baking Company (Continental) on December 20, *419 1956. Mayburn leased the entire premises from Grand as of February 1, 1957, and thereafter was continuously in possession of it. The sidewalk in question, consisting of three longitudinal strips of concrete, was installed in 1945 during Continental's ownership. Mayburn at no time made any repairs to the sidewalk. Grand did effectuate one or more repairs to the walk, but at a location or locations different from the situs at which plaintiff fell.
The condition which caused the accident was described as a hole in the middle longitudinal section, approximately four to five inches long and one to two inches deep. It appears to have progressed to that size over a period of "perhaps six months to a year."
It was the opinion of plaintiff's expert, Henry E. Kruse, a civil engineer, that the hole evidenced a lack of durability attributable to improprieties in the original construction which will be more fully discussed hereinafter. The expert conceded that the "defect in construction" was not such as could be determined by a layman on visual inspection. The president of Grand deposed that at the time the property was purchased in 1956 he had made an inspection of the sidewalk and found it to be in good condition.
The law of this State is well settled that where a sidewalk does not conform with the proper standards of construction at the time of installation, and a nuisance is thereby created, subsequent owners are deemed to have adopted such nuisance and become legally liable for its maintenance. Schwartz v. Howard Savings Institution, 117 N.J.L. 180, 183 (E. & A. 1936). However, the owner is not responsible for defects caused by the action of the elements or by wear and tear incident to public use and not related to his own wrongful neglect. Moskowitz v. Herman, 16 N.J. 223, 225 (1954).
In those cases in which an owner has been held liable for adopting and maintaining a nuisance created by a predecessor in title, the condition has been one which has been readily ascertainable upon ordinary inspection. Typical of these are *420 Braelow v. Klein, 100 N.J.L. 156 (E. & A. 1924), where the sidewalk in question was constructed three inches above the level of the adjoining sidewalk, and Gainfort v. 229 Raritan Avenue Corp., 127 N.J.L. 409 (Sup. Ct. 1941), where the sidewalk was in an area where a gasoline pump had been removed and the walk covering the excavation had sunk one and one-half to two inches below the adjoining sidewalk level. And see also Lambe v. Reardon, 69 N.J. Super. 57 (App. Div. 1961), certification denied 36 N.J. 138 (1961).
Our courts appear not to have directly come to grips with the problem of the liability of a subsequent owner for the faulty construction by a predecessor in title when the owner is unaware that a hazardous sidewalk condition which first becomes apparent during his ownership is due to a structural defect. In Gainford v. 229 Raritan Avenue Corp., supra, the court drew attention to this question but found that it had no occasion to decide it. This court took the same course in Orlik v. DeAlmeida, 45 N.J. Super. 403, 407-408 (App. Div. 1957). Plaintiff argues there is such liability, but we find we do not need to reach the question in this case.
Plaintiff's expert, Kruse, testified that, upon visual inspection of the sidewalk made October 2, 1961 (ten months after the accident), he found that 80 to 90 percent of the coarse aggregate of the middle longitudinal strip of the sidewalk was exposed in a "sporadic" pattern. This indicated to him "some improper construction was done in this particular section of the sidewalk." He went on to say that four "particular items" could have caused this condition to exist:
"One, an improperly proportioned mix in which the cement area did not completely cover all of the coarse aggregate. In other words. Did not surround the coarse aggregate imbedded in the concrete mix. Another or number two would be a mix which was improperly mixed, either time or improper equipment. Without knowing whether or not any equipment was used to produce this particular mix I have no way of telling whether it was done by hand or what. However, this is a condition that can cause a condition that exists on the sidewalk, an improper mix.
Item number three could be improperly placed. Concrete is an extremely, you might say, difficult material to work with. It requires *421 that the mechanics who mix it and place it and finish it are well trained in their field. It is a nonhomogeneous material and one of the areas in which a great deal of disturbances can happen with concrete is in the placing of concrete by improper placing. We get a segregation of aggregates. We have masses of coarse aggregates in the section of concrete. In other sections we have masses of cement. So, concrete does not become as homogeneous as possible. The attempts in placing concrete are to make it as close as possible.
Item number four is in the finishing of concrete. This once again requires good competent mechanics. The conditions such as indicated by the sidewalk can be caused by improper finishing, with too much finishing with a steel trowel which will bring the fines and water out of the concrete mix to the top of the pavement causing a scale on top of the pavement which is very weak in sections and scales off in an ordinary foot travel. It can scale off in ordinary weather conditions.
These are the four items. I believe either one or a combination have contributed to the condition of this middle longitudinal strip."
On cross-examination the expert modified his opinion by conceding that the "four items" either singly or together were possible causes of the condition he described. He based his opinion of improper construction of the sidewalk largely upon the thesis that the mixture used did not conform with the standards fixed by the Portland Cement Association. However, he conceded that he took no samples, and that no analysis was made to determine of what the sidewalk was composed or of the proportions of its components. Our analysis of Mr. Kruse's testimony leads us to conclude that his opinion was based on a premise that a proper concrete sidewalk should last for 40 years, and that, since this walk commenced to deteriorate in approximately 15 years, it must necessarily have been of defective and substandard construction.
We know of nothing in the law which requires that a sidewalk be so constructed as to withstand the rigors of use and action of the elements for any given length of time, and we know of no requirement which calls upon an owner to construct a 40-year sidewalk, or visits liability upon him if he chooses to build a 15-year sidewalk. Nor are we aware of any principle that where a subsequent owner observes a deteriorating condition which to his eyes would appear to be the *422 result of ordinary wear and tear, he is required to employ expert aid to determine how and of what the sidewalk was constructed by his predecessor in title. Compare Schwartz v. Howard Savings Institution, supra, 117 N.J.L., at p. 184, in which the court said:
"This particular pavement having been shown to be level * * * when constructed * * * the law will not punish this defendant because his predecessors in title did not achieve perfection or use the best possible means of sidewalk construction."
Consequently, we conclude that the disintegration of this sidewalk approximately 15 years after it was installed cannot be said to constitute a nuisance arising from faulty construction which Grand is chargeable with adopting and maintaining.
As to Mayburn there was no evidence that it was in control of the sidewalk structure, hence the motion in its favor was properly granted.
Accordingly, we affirm.