CATHERINE BRENNAN AND WILLIAM BRENNAN, PLAIN-
TIFFS-APPELLANTS, v. FRANK McCARREN AND EDNA
McCARREN, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 3, 1966—Decided November 18, 1966.

(1)

Before Judges CONFORD, FOLEY and LEONARD.

*Mr. Gerald D. Miller* argued the cause for appellants (*Mr. Abraham Miller,* attorney).

*Mr. Floyd F. Lombardi* argued the cause for respondents (*Messrs. DeSevo & Cerutti,* attorneys).

The opinion of the court was delivered by
FOLEY, J. A. D. In this negligence case, tried before a jury, plaintiffs appeal from a judgment of involuntary dismissal which was granted on defendants' motion at the conclusion of plaintiffs' case.

Defendants were the owners of property located at the corner of Brinkerhoff Street and Bergen Avenue, Jersey City, fronting on Bergen Avenue. Defendants maintained a concrete sidewalk on the premises, about four feet in width. The sidewalk itself appears to be in perfect condition, and there

was no evidence to the contrary. Between the sidewalk and curb on the Brinkerhoff Street side there is a strip of dirt approximately four feet in width. At the time of the accident the level of the sidewalk was, on the average, about two inches higher than the dirt strip. On the afternoon of March 13, 1962 Mrs. Brennan, while attempting to pass some children who were also upon the sidewalk, stepped from it to the dirt strip, and by reason of the difference in level (which at that point was "at least two inches") tripped or lost her balance and fell. She sustained injuries for which she brought this action, her husband joining for consequential losses. The sidewalk was constructed by a prior owner at a time which is not specified.

Although the issues as raised by the pleadings are somewhat ambiguous, it appears from the record that the theory of liability advanced by plaintiffs at the trial was that the construction of the sidewalk was improper in that the dirt strip had not been made flush with the concrete walk, thus creating the dangerous condition which caused Mrs. Brennan to be injured.

■■ It is clearly the law of this State that an "owner is not liable for injuries suffered by a pedestrian on a defective or dilapidated sidewalk even though it constitutes a nuisance. unless the proofs show that that owner or a predecessor in title participated in the creation or continuance of the nuisance," and further, that such owner "is not responsible for defects therein caused by the action of the elements or by wear and tear incident to public use, and not caused by his own wrongful act." *Moskowitz v. Herman,* 16 *N. J.* 223, 225 (1954). There the distinction between liability and nonliability was said to be " 'between a faulty construction and its continuance, and dangers which may exist because of the wear and tear of the elements and the public.' " *Id.,* at *p.* 226.

In an effort to discharge the substantial burden of proving that the existing danger was the result of fault in the original construction of the sidewalk, the continuance of which created liability in subsequent owners, rather than the result

of the action of the elements on the dirt strip, plaintiffs
called as an expert witness Kenneth Gibson, a licensed civil
engineer, who was properly found by the trial court to be
suitably qualified. Mr. Gibson testified that he had inspected
the sidewalk on November 11, 1965 and found it and the
adjacent areas to be as described. He stated that accepted
practice dictates that in the construction of a sidewalk the
longitudinal grade (the grade running lengthwise of the
street) should be maintained, and that the transverse grade
from the property to the curb line should also be main-
tained, first, to provide proper drainage, and secondly, to
obviate tripping hazards resulting from any unlooked-for
differences in elevation. Consequently, he concluded that the
sidewalk was substandard as of the time he saw it. The wit-
ness stated, further, that in his judgment the conditions which
he found had existed for a minimum of five years.

On cross-examination he frankly admitted that he did
not know whether at the time of the construction of the side-
walk the concrete and dirt portions were level and that
thereafter the dirt became eroded by action of the elements.

On redirect examination he exposed the basis of his think-
ing, saying that it was his view that "standards dictate that
the transverse grade of sidewalks be *maintained,*" and the
further explanation that "the dirt strip should have been
at an elevation which would allow the transverse grade to be
maintained between the concrete sidewalk and the top of the
curb" but "in this particular case it was done with dirt or
top soil." He said, further, that "if dirt strips are to be used
to maintain the grade, then they should be properly sodded
and seeded so that the natural elements do not erode away.
That dirt strip in this particular case, this was not done and
*that is the basis of my opinion.*" At the conclusion of the
redirect the following appears:

"THE COURT: Do you know that this concrete and dirt sidewalk
were level or not level at the time of the construction of the sidewalk,
the concrete sidewalk? Will you answer that yes or no?
THE WITNESS: I do not know for sure, sir."

A fair reading of the expert's testimony, giving to plaintiffs the benefits of all legitimate inferences which may be drawn from it, impels the following analysis: (1) if at the time of construction the sidewalk had effected a change of elevation between the concrete surface and the dirt, such construction would have been defective and dangerous; (2) if, on the other hand, it was built to grade at that time, the construction would not have been defective and obviously not dangerous, and (3) in respect of the grading, the witness did not know which of these conditions existed when the sidewalk was installed. The obvious rationale of Gibson's opinion is that where a concrete sidewalk is installed adjacent to a dirt strip, there is not only an obligation to bring the two surfaces to grade but thereafter a continuing duty upon the property owner to *maintain* the sidewalk and dirt or grassed surface, and to constantly protect the dirt or grass surface from the wear and tear of the elements and to keep it in grade with an adjoining sidewalk. We assume he did not mean that the duty of proper construction would be satisfied by merely an initial sodding or seeding without further maintenance, as it is common knowledge that rainstorms will sometimes wash out newly seeded dirt and that grassy strips develop uneven terrain in contradistinction to concrete or stone walks.

The asserted duty of *maintenance* does not appear to be approved in the law of this State. Compare *Moskowitz v. Herman, supra,* and *Hartye v. Grand Properties, Inc.,* 82 *N. J. Super.* 416 (*App. Div.* 1964). We see no difference between a dirt or grass area and the sidewalk proper such as to create a continuing duty of maintenance of the former which does not exist as to the latter.

 We are, therefore, of the view that in the present state of the law the court properly struck the expert's testimony since his opinion was not supported by actual knowledge of the original construction, and in a large sense was based upon a false legal premise respecting maintenance. But even had the court not struck the testimony, we think that the

judgment of involuntary dismissal would have been properly granted for lack of a factual showing that the sidewalk was improperly constructed originally.

Affirmed.