HAROLD STEWART, PLAINTIFF-APPELLANT, v. 104 WALLACE STREET, INC., A CORPORATION OF THE STATE OF NEW JERSEY, T/A ERNIE'S TAVERN, AND JAY-NAN CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued March 24, 1981—Decided July 22, 1981.

*Alan Y. Medvin* argued the cause for appellant (*Horowitz, Bross & Sinins*, attorneys).

*Gerald Kaplan* argued the cause for respondent 104 Wallace Street, Inc., etc. (*Lieb, Berlin & Kaplan,* attorneys).

*William J. Hanley* argued the cause for respondent Jay-Nan Corporation, etc. (*Ronca, McDonald & Judge,* attorneys; *Dennis M. DiVenuta,* on the brief).

The opinion of the Court was delivered by

PASHMAN, J.

In this case we are called upon once again to review this State's law of sidewalk negligence. In particular, we must decide whether an abutting commercial landowner is liable for a pedestrian's injuries caused by a dilapidated sidewalk. Most recently, in *Yanhko v. Fane,* 70 *N.J.* 528 (1976), the majority of a divided Court upheld the old rule of nonliability and dismissed plaintiffs' action for failure to state a *prima facie* case. Today, for the reasons stated below, we overrule *Yanhko* and hold that a plaintiff has a cause of action against a commercial property owner for injuries sustained on a deteriorated sidewalk abutting that commercial property when that owner negligently fails to maintain the sidewalk in reasonably good condition.

I

In the afternoon of May 30, 1976 plaintiff, Harold Stewart, went to Ernie's Tavern at 158 South Orange Avenue, Newark where he had one glass of beer. Ernie's Tavern was owned by defendant 104 Wallace Street, Inc., and the property on which the tavern was located was owned by defendant Jay-Nan Corporation.[1]

After having the beer, Stewart remained at Ernie's for a time, watching people play pool. Upon leaving the tavern, Stewart

---

[1] Both Jay-Nan and 104 Wallace Street are owned by Nancy Jones and Ernestine Chambers, each of whom owns one half of the shares of each corporation.

walked a short distance from the tavern entrance and then fell on the sidewalk abutting a vacant boarded lot adjacent to Ernie's Tavern. This lot, like the property on which Ernie's was located, was owned by defendant Jay-Nan.

Stewart's fall was allegedly caused by the seriously dilapidated condition of the sidewalk abutting Jay-Nan's lot.[2] As a result of the fall, Stewart was apparently seriously injured, and underwent surgery and prolonged hospitalization.

Plaintiff brought an action for damages against defendants, 104 Wallace Street, Inc. and Jay-Nan Corp. Defendant 104 Wallace Street impleaded Public Service Electric & Gas Co. as a third party defendant.

In a pretrial proceeding the trial court permitted the plaintiff to make an offer of proof. Following this, the court dismissed both plaintiff's complaint and the third party action against Public Service based on the controlling rule of law as stated by this Court in *Yanhko v. Fane, supra*.

We granted plaintiff's request for direct certification to the Superior Court, Law Division, in order to reevaluate the statement of the law in *Yanhko*. 85 *N.J.* 463 (1980). We conclude that the present law of sidewalk liability, at least with respect to abutting commercial property owners, is anachronistic and produces harsh and unfair results. Commercial property owners are henceforth liable for injuries on the sidewalks abutting their property that are caused by their negligent failure to maintain the sidewalks in reasonably good condition.

Accordingly, we reverse the judgment dismissing plaintiff's complaint against defendant Jay-Nan Corp. and remand the case for a full trial. The judgment dismissing plaintiff's complaint against the tavern owner, 104 Wallace Street, Inc., is, however, affirmed.

---

[2]The trial judge, who saw photographs of the sidewalk, said that "clearly dilapidated" would be a "mild term" to describe the sidewalk, the condition of which, he added, "is to say the least shocking."

## II

■ Sidewalks are an essential feature of our urban landscapes. Consistent with their function, it has long been the law of this State that "[a] sidewalk is intended primarily for pedestrians" and that "the primary function of the sidewalk [is] the public's right of travel on it." *Davis v. Pecorino,* 69 *N.J.* 1, 5 (1975); *accord, Saco v. Hall,* 1 *N.J.* 377, 382 (1949); *West Jersey R.R. Co. v. Camden, Gloucester & Woodbury Ry. Co.,* 52 *N.J.Eq.* 31, 36 (Ch. 1893); *Halsey v. Rapid Transit Street Ry. Co.,* 47 *N.J.Eq.* 380, 383 (Ch. 1890); *see* Stevenson, *Law of Streets and Sidewalks in New Jersey,* 3 *Rut.L.Rev.* 19, 26–27 (1949) (hereinafter "Stevenson"). As a consequence of this primary right of the public to use the sidewalk,

> ... any act or obstruction that unnecessarily incommodes or impedes its lawful use by the public is a nuisance. The traveling public has the right to assume that there is no dangerous impediment or pitfall in any part of it. [*Saco v. Hall, supra,* 1 *N.J.* at 382]

*Accord, Yanhko v. Fane, supra,* 70 *N.J.* at 534; *Fredericks v. Dover,* 125 *N.J.L.* 288, 290 (E. & A. 1940); *Garvey v. Public Service Co-Ordinated Transport,* 115 *N.J.L.* 280, 284 (E. & A. 1935); *Durant v. Palmer,* 29 *N.J.L.* 544, 547–48 (E. & A. 1862).

■ Subject to this public easement, the owner of abutting property retains considerable interest in and rights to use the sidewalk over and above those of the public—rights that are especially valuable to an owner of abutting commercial property. Such an owner has a cause of action to prevent obstruction of the public's view of his premises from the sidewalk. *See State v. Londrigan,* 4 *N.J.Misc.* 574 (Sup.Ct. 1926); 2 *American Law of Property,* § 9.54 at 495 (1952). The owner may also "use the adjacent sidewalk for stoops, areas, shutes, and other domestic and trade conveniences." *Weller v. McCormick,* 47 *N.J.L.* 397, 400 (Sup.Ct.1885); *see State v. Mayor of Newark,* 37 *N.J.L.* 415, 423 (E. & A. 1874), subject, of course, to the public's paramount easement of unobstructed use, *see Christine v. Mut. Grocery Co.,* 119 *N.J.L.* 149, 152 (E. & A. 1937). With proper

regard for the convenience of the public, landowners may "deposit in the street building materials required in the improvement of their abutting property." *Friedman v. Snare & Triest Co.*, 71 *N.J.L.* 605, 610 (E. & A. 1905). In addition, sidewalks provide commercial owners with easy access to their premises and increase the value of their property. Public use of commercial establishments is facilitated by the existence of sidewalks.

Notwithstanding these substantial interests, the right of the public to safe and unimpeded passage along the sidewalk must prevail. This basic principle is reflected in a number of specific rules imposing upon an abutting landowner the duty of maintaining sidewalks in safe condition.

For instance, the abutting landowner is liable for faulty or dangerous construction of a sidewalk if either he or his predecessors in title built the sidewalk. *E. g., Ford v. Jersey Central Power & Light Co.*, 111 *N.J.L.* 112, 113 (E. & A. 1933); *Braelow v. Klein*, 100 *N.J.L.* 156, 158 (E. & A. 1924); *Mount v. Recka*, 35 *N.J.Super.* 374, 381 (App.Div. 1955); Stevenson, *supra*, 3 *Rut.L.Rev.* at 31–32, 42–43. The owner is also liable for improper or negligent repair of the sidewalk. *Lambe v. Reardon*, 69 *N.J.Super.* 57, 65 (App.Div. 1961), certif. den., 36 *N.J.* 138 (1961); *Orlik v. DeAlmeida*, 45 *N.J.Super.* 403, 406 (App.Div. 1957). If the sidewalk is rendered unsafe by the abutting owner's "special use" or his "improper use" of it, the owner will be liable. *E. g., Davis v. Pecorino, supra* (gas station owner liable for dangerous condition caused by cars driving over snow on sidewalk to enter gas station); *Prange v. McLaughlin*, 115 *N.J.L.* 116 (E. & A. 1935) (apartment house owner liable for deterioration caused by coal trucks driving onto sidewalk to deliver coal). An abutting owner is also liable for injuries to the public arising from the construction of a drain, a grating or a coal hole on the sidewalk, *Young v. Nat'l Bank of New Jersey*, 118 *N.J.L.* 171, 172 (E. & A. 1937), or for an "invasion of the public easement for the owner's benefit by the erection and use of devices located over and above the sidewalk" that create "a

dangerous condition in the public easement," *Saco v. Hall, supra,* 1 *N.J.* at 383 (factory owner liable for injuries caused when drains on his building deteriorated, causing water to run onto sidewalk and create icy conditions there).

Not only do these rules impose extensive liability on the abutting owner for dangerous conditions in the sidewalk arising during his period of ownership, but the owner "is also liable for defects in the sidewalk in the nature of a nuisance created by the wrongful or negligent act of a predecessor in title, the nuisance being considered as adopted by the taking of a deed with such defect existent." *Schwartz v. Howard Savings Institution,* 117 *N.J.L.* 180, 183 (E. & A. 1936); *Braelow v. Klein, supra,* 100 *N.J.L.* at 158; *Hartye v. Grand Properties, Inc.,* 82 *N.J.Super.* 416, 419 (App.Div. 1964), certif. den., 42 *N.J.* 500 (1964).

### III

Until today, our courts have not extended the liability of owners of abutting property, commercial or residential, to include injuries to pedestrians caused by the evident and dangerous deterioration or dilapidation of sidewalks because of neglect. Thus, in *Yanhko v. Fane, supra,* it was held, consistent with prior cases, that

> ... an abutting owner is not liable for the condition of a sidewalk caused by the action of the elements or by wear and tear incident to public use, but only for the negligent construction or repair of the sidewalk by himself or by a specified predecessor in title or for direct use or obstruction of the sidewalk by the owner in such a manner as to render it unsafe for passersby. [70 *N.J.* at 532]

*Accord, Murray v. Michalak,* 58 *N.J.* 220 (1971); *Moskowitz v. Herman,* 16 *N.J.* 223, 225 (1954); *Orlik v. DeAlmeida, supra,* 45 *N.J.Super.* at 406; *Fischer v. Salomone,* 136 *N.J.L.* 431, 432 (Sup.Ct.1948); *Rupp v. Burgess,* 70 *N.J.L.* 7, 9 (Sup.Ct.1903).

The "no liability" rule is a product of early English common law, which provided that "the parish at large is prima facie bound to repair all highways lying within it." *The King v. Inhabitants of Sheffield,* 2 *T.R.* 106, 111, 100 *E.R.* 58, 61 (K.B.

1787); *see Moskowitz v. Herman, supra,* 16 *N.J.* at 228 (Jacobs, J., dissenting); *Mount v. Recka, supra,* 35 *N.J.Super.* at 380; *Weller v. McCormick, supra,* 47 *N.J.L.* at 399. The consequence in New Jersey was that in early cases the primary responsibility for the maintenance of sidewalks was placed on the government. *See Mount v. Recka, supra,* 35 *N.J.Super.* at 380.

Despite the long-recognized differences between the present condition of our cities and towns and the conditions which gave rise to this rule, *see Moskowitz v. Herman, supra,* 16 *N.J.* at 228 (Jacobs, J., dissenting); *Stevenson, supra,* 3 *Rut.L.Rev.* at 22, we have thus far declined to extend to abutting commercial property owners liability for failure to perform necessary maintenance of sidewalks. Several justifications have been offered for the failure to do so, including the weight of prior precedent. *See Yanhko v. Fane, supra,* 70 *N.J.* at 531. It has also been suggested that it would be arbitrary to impose this liability on an abutting owner "for no better reason than that his property is proximate to [the sidewalk]," *id.* at 534, and that such liability will be unduly onerous for the property owner. *See Davis v. Pecorino, supra,* 69 *N.J.* at 12 (Clifford, J., dissenting). Finally, defendants add that the present law adequately protects pedestrians.

Such rationales do nothing to alter the harshness and inadequacy of the "no liability" rule. The starting point for any critique of this rule is its obvious unfairness, which was well stated by Justice Proctor ten years ago:

It is manifestly unjust to permit a property owner to sit idly by and watch with impunity as his sidewalk deteriorates to a point where it becomes a trap for unwary pedestrians and then to immunize him from liability when the all too foreseeable injuries occur. [*Murray v. Michalak, supra,* 58 *N.J.* at 223 (dissenting opinion)]

*Accord, Moskowitz v. Herman, supra,* 16 *N.J.* at 228 (Jacobs, J., dissenting) (the present rule is "pregnant with seeds of gross injustice"); *Yanhko v. Fane, supra,* 70 *N.J.* at 546–47 (Pashman, J., dissenting).

The general rule of non-liability undermines basic goals of tort law in two critical ways. First, as this Court has recognized, it has "left without recourse many innocent parties who suffered serious injuries because of sidewalk defects."[3] *Krug v. Wanner*, 28 *N.J.* 174, 180 (1958). Second, the present law gives abutting property owners no incentive to repair deteriorated sidewalks and thereby prevent injuries. Indeed, it actually provides a disincentive since an owner, presently not liable for failure to repair, will be liable for repairs voluntarily undertaken but negligently performed. *Murray v. Michalak, supra*, 58 *N.J.* at 223 (Proctor, J., dissenting); *see Snidman v. Dorfman*, 7 *N.J.Super.* 207, 211 (App.Div. 1950).

Equally important, the present "no liability" rule is derived from conditions that no longer exist and is not responsive to current urban conditions. If municipalities may at one time have been solely responsible for the provision and maintenance of sidewalks, they have not been so for many years. *See Moskowitz v. Herman, supra*, 16 *N.J.* at 228 (Jacobs, J., dissenting). *N.J.S.A.* 40:65–14 expressly authorizes municipalities to make it "the duty of any owner of abutting lands ... to construct, repair, alter or relay any curb or sidewalk, or section thereof." Numerous municipalities have exercised this authori-

---

[3]The question of the possible liability of a municipality for injuries sustained on deteriorated sidewalks is not before us. Numerous provisions of the Tort Claims Act, *N.J.S.A.* 59:1–1 *et seq.*, enacted in 1972, might be relevant to a determination of this issue in a given case. *See, e. g., N.J.S.A.* 59:2–2(b) (no liability of public entity for "an act or omission of a public employee where the public employee is not liable"); *N.J.S.A.* 59:2–3 (public entity not liable for discretionary activities); *N.J.S.A.* 59:2–6 (public entity not liable for failure to inspect); *N.J.S.A.* 59:4–7 (public entity not liable for injury caused by "the effect on the use of streets and highways of weather conditions"). *See also* Note, *Survey of Tort Law—Sidewalk Negligence*, 30 *Rut.L. Rev.* 782, 789 & n.46 (1977). *But cf. Brown v. Brown and State of New Jersey*, 86 *N.J.* 565 (1981) (State liable for palpably unreasonable failure to maintain drainage ditch along highway); *Milstrey v. City of Hackensack*, 6 *N.J.* 400 (1951) (municipality liable for injuries caused by its negligent repair of sidewalks).

ty. For example, § 22:3–1 of the *Revised Ordinances of Newark*, applicable in the present controversy, provides:

> Any person owning, leasing or occupying any house or other building, or vacant lot, fronting on any street in the city shall, at his or their charge and expense, well and sufficiently pave and maintain in good repair, in accordance with this title and the regulations of the director, the sidewalk, including the authorized installations thereon and therein, and the curb of the street in front of such house, building or lot.[4]

*See also, Yanhko v. Fane, supra,* 70 *N.J.* at 536 & n.2 (ordinance of City of Egg Harbor requires abutting owners to maintain sidewalks); *Lambe v. Reardon, supra,* 69 *N.J.Super.* at 67–68 (similar ordinance of Borough of Rutherford).

In addition, there is the well-recognized difficulty of proving a case under the old rule. As one court has acknowledged in denying recovery, "[i]t must be conceded that the proofs necessary to establish a *prima facie* case may often be difficult or impossible for a plaintiff to discover." *Murray v. Michalak,* 114 *N.J.Super.* 417, 419 (App.Div. 1970), aff'd o. b., 58 *N.J.* 220 (1971). Such proofs may include the extremely elusive ones of "when the sidewalk was constructed and the proper standard of construction at that time." *Moskowitz v. Herman, supra,* 16 *N.J.* at 225 (noting that plaintiff's "prime difficulty" was her lack of proof as to these matters); *Brennan v. McCarren,* 93 *N.J.Super.* 1 (App.Div. 1966), certif. den., 48 *N.J.* 449 (1967) (involuntary dismissal of plaintiff's case proper where plaintiff's expert did not offer satisfactory evidence that sidewalk had not been improperly constructed many years before).

Finally, there is the obvious arbitrariness of the fact that in accidents occurring within the boundaries of business premises, a plaintiff injured as a consequence of defendant's failure to

---

4It has been suggested that this ordinance alone would be sufficient to create a duty running directly from abutting landowners to pedestrians using the sidewalk, and that violation of the ordinance by an abutting landowner would constitute negligence *per se. See Moskowitz v. Herman, supra,* 16 *N.J.* at 228 (Jacobs, J., dissenting). However, we rest our decision today on broader principles of common law.

maintain safe premises would have a cause of action, whereas the same plaintiff injured on a poorly maintained public sidewalk just outside the premises would, under the present law, have no such cause of action. *See Yanhko v. Fane*, 70 *N.J.* at 543–44 (Pashman, J., dissenting).

## IV

■ We hold today that commercial landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so. Although we recognize that the "no liability" rule remains the law in the majority of jurisdictions, *see* Annot., *Liability of abutting owner or occupant for condition of sidewalk*, 88 *A.L.R.2d* 331 (1963), we prefer to apply the rule of our neighboring state to cases involving commercial property. In Pennsylvania, the rule has long been that it "is the primary duty of property owners along a street to keep in proper repair the sidewalk in front of their respective properties." *Mintzer v. Hogg*, 192 *Pa.* 137, 144, 43 *A.* 465, 466 (1899); *accord, Nash v. Atlantic White Tower System, Inc.*, 404 *Pa.* 83, 170 *A.2d* 341 (1961); *Breskin v. 535 Fifth Ave.*, 381 *Pa.* 461, 113 *A.2d* 316 (1955); *Green v. Borough of Freeport*, 218 *Pa.Super.* 334, 280 *A.2d* 412 (1971); *see generally* Annot., *supra*, 88 *A.L.R.2d* at 348–52. *See also Lewis v. City of Bluefield*, 48 *F.R.D.* 435, 438 (S.D.W.Va. 1969) (under West Virginia law, violation by abutting property owners of ordinance requiring them to maintain sidewalks in good repair gives injured pedestrians cause of action against property owner); *accord, Maxey v. City of Bluefield*, 151 *W.Va.* 302, 151 *S.E.2d* 689 (1966).

This new rule responds to many of the weaknesses of the no liability rule. It will provide a remedy to many innocent plaintiffs for injuries caused by improper maintenance of sidewalks. As a corollary, it will give owners of abutting commercial property an incentive to keep their sidewalks in proper repair, a duty already created in many cases by municipal ordinances. It

will also eliminate much of the arbitrariness of the old rule. In addition, injured persons will be able to recover for injuries sustained just outside a store as well as those sustained within it. *Cf. Merkel v. Safeway Stores, Inc.,* 77 *N.J.Super.* 535, 538 (Law Div. 1962) (store owner liable to customers injured on sidewalk between parking area and entrance to store).

Nor are the arguments offered in support of the old rule sufficiently persuasive to justify its retention. Most important, sidewalk repair and maintenance can no longer accurately be characterized solely as a municipal responsibility. In addition, the conditions which gave rise to the no liability rule for abutting landowners have changed. In view of such changes, excessive weight should not be given to prior cases upholding the rule.

Furthermore, as has been noted, the owners of abutting property, particularly commercial property, retain considerable interests in and rights to use sidewalks over and above those of the public—a fact which renders imposition of the duty of maintenance upon them appropriate and not "arbitrary," as suggested in *Yanhko, supra. See* 70 *N.J.* at 534. Logic and common sense also support the imposition of this duty, inasmuch as owners of abutting property are in an ideal position to inspect sidewalks and to take prompt action to cure defects. *See* Note, *supra,* 30 *Rut.L.Rev.* at 789.

Finally, we do not consider the Legislature's refusal to impose liability on an abutting landowner for failure to maintain sidewalks to be dispositive. The drawing of the parameters of tort liability has historically been a matter of common law and squarely within the province of this Court. A long line of cases denying recovery to innocent injured plaintiffs makes it abundantly clear that the present law is inadequate to protect pedestrians and is more than overdue for reform.

We do not believe that the duty we are imposing on abutting property owners will be an onerous one. The standard of care, after all, will be *reasonableness.* We do not contemplate liabili-

ty "for injuries caused by minor flaws and stretches of unevenness." [5]  *Murray v. Michalak, 58 N.J.* at 224–25 (Proctor, J., dissenting).   Nor are we creating an entirely new field of liability with respect to sidewalks, but are merely adding to duties of abutting owners that already exist.

The duty to maintain abutting sidewalks that we impose today is confined to owners of commercial property.   *See Yanhko v. Fane, supra,* 70 *N.J.* at 537 (Pashman, J., dissenting); *Davis v. Pecorino, supra,* 69 *N.J.* at 8;   *Murray v. Michalak, supra,* 58 *N.J.* at 225 (Proctor, J., dissenting); *Krug v. Wanner, supra,* 28 *N.J.* at 180 (*dictum*);   *Moskowitz v. Herman, supra,* 16 *N.J.* at 228 (Jacobs, J., dissenting).   While we acknowledge that whether the ownership of the property abutting the sidewalk is commercial or residential matters little to the injured pedestrian, *see Davis v. Pecorino, supra,* 69 *N.J.* at 12 (Clifford, J., dissenting), we believe that the case for imposing a duty to maintain sidewalks is particularly compelling with respect to abutting commercial property owners.[6]   As we observed in *Krug v. Wanner, supra,*

> For the protection of its patrons, every commercial establishment must maintain its premises, including means of ingress and egress, in reasonably safe condition.  And although the paved sidewalks fronting a commercial establishment are primarily for the use of the public generally, their condition is so beneficially related to the operation of the business that the unrestricted legal duty of maintaining them in good repair might, arguably, be placed on it.  [28 *N.J.* at 179–80 (citations omitted)]

---

[5] We do not decide the question of an abutting commercial property owner's liability for injuries due to natural accumulations of ice and snow on the sidewalk.  *See, e. g., Skupienski v. Maly,* 27 *N.J.* 240 (1958);  *O'Neill v. Suburban Terrace Apartments, Inc.,* 110 *N.J.Super.* 541 (App.Div. 1970), certif. den., 57 *N.J.* 138 (1970).

[6] We do not reach the question of whether the same duty should be imposed on owners of residential property or whether the policy considerations underlying the impositions of a duty on commercial property owners apply to residential property owners.   We note, however, that the law of sidewalk liability is an appropriate subject for reconsideration by the Legislature.

The rule we adopt today rationalizes our law by enabling an injured person to recover damages for injuries sustained on the sidewalk in front of a store as well as those sustained in the store.

We recognize that the rule adopted today will increase the expenses of many businesses, and will be proportionately more burdensome to small firms than to large ones. However, we anticipate that appropriate insurance will become available and that the cost of such insurance will be treated as one of the necessary costs of doing business.

As for the determination of which properties will be covered by the rule we adopt today, commonly accepted definitions of "commercial" and "residential" property should apply, with difficult cases to be decided as they arise.[7]

## V

Consistent with the rule adopted today, we reverse the judgment of the trial court dismissing plaintiff's complaint against defendant Jay-Nan Corp., the owner of the commercial property abutting the sidewalk where plaintiff's injury allegedly occurred, and remand for a full trial. The judgment dismissing plaintiff's complaint against defendant 104 Wallace Street, Inc., lessee of an adjacent property, is affirmed.

SCHREIBER, J., concurring.

Should a duty of due care to maintain a public sidewalk be imposed on the owner of the abutting property so that it does not constitute a hazard to members of the public lawfully using it? On several occasions a majority of this Court has answered this question in the negative. The harshness of this position has been somewhat ameliorated by various exceptions to the propo-

---

[7]For example, apartment buildings would be "commercial" properties covered by the rule.

sition that the abutting landowner has no obligation, all of which are referred to in the majority opinion. Now the Court has extended the exceptions to all situations where the adjacent property is commercial. I commend this move, and join in the opinion and reversal of the judgment entered as a matter of law in favor of the defendant. However, I would rest the reversal on even broader grounds.

Imposition of a duty to maintain the adjacent sidewalk depends upon the existence of sound policy justification. In other words, is it fair? We are therefore called upon to consider such factors as the relationship of the parties, the nature of risk, the person best able to prevent the dangerous condition, and the party who should bear the costs attributable to the injury.

Some of the more important considerations are apparent. The public has a right to travel on the sidewalk unimpeded by obstructions or dangerous conditions. The property owner is generally in the best position to become aware of disrepair, and then correct the condition. Moreover, the owner has a special interest in having a walk in good condition. If the property is being used for a business activity, it is in the owner's interest to have safe means of ingress and egress for customers, employees and other invitees. The residential owner is concerned with the safety of his family, invitees and himself as well as the appearance of his property. Further, the owner generally may purchase an insurance policy covering liability to pedestrians injured because of defects in the sidewalk. When the injury to the innocent pedestrian is weighed against the interests of the property owner who was in a position to prevent the hazardous condition, notions of fairness weigh heavily in favor of imposing the obligation.

This policy has been affirmatively recognized by the Legislature in *N.J.S.A.* 40:65–14 which authorizes

[a]ny municipality [to] prescribe by general ordinance in what case curbs and sidewalks shall be constructed, repaired, altered, relaid or maintained at the expense of the abutting landowners ....

The statute further prescribes that a municipality pursuant to a resolution may serve a notice requiring the owner to repair the sidewalk in 30 days and that in default thereof the municipality may do the work, the cost to become a lien on the property.

In some circumstances the municipality may maintain the public sidewalk. Arguably, when that is true the property owner has no control over, or the right to correct, the condition. I would recognize that circumstance as an exception to the general proposition which would operate as a defense to be established by the property owner. Here, of course, the City of Newark has long had an ordinance charging any person owning, leasing, or occupying any structure or vacant lot bordering any street with maintaining the sidewalk in good repair. *Ante* at 155. The duty of the landowner having been expressly confirmed, the judgment should be reversed.

SULLIVAN and CLIFFORD, JJ., dissenting.

We would affirm the judgments below in favor of both defendants, on the basis of the long-standing law recited and reaffirmed in *Yanhko v. Fane*, 70 *N.J.* 528 (1976). As stated therein, the primary responsibility for maintaining public rights of way such as sidewalks should rest on government. No legal basis or logical reason exists for imposing liability for public sidewalk accidents on the abutting property owner where the condition of the walk is the result of ordinary wear and tear any more than for holding him responsible for accidents due to a similar condition in the public street in front of his property.

SCHREIBER, J., concurring in the result.

*For affirmance in part and reversal in part*—Chief Justice WILENTZ and Justices PASHMAN, SCHREIBER, HANDLER and POLLOCK—5.

*For affirmance*—Justices SULLIVAN and CLIFFORD—2.