182 N.J. Super. 645 (1981)
442 A.2d 1087
ARLENE JACKSON AND GEORGE JACKSON, HER HUSBAND, PLAINTIFFS,
v.
K-MART CORPORATION, AMTERRE MANAGEMENT, INC., INDIVIDUALLY AND TRADING AS MILLSIDE SHOPPING CENTER, MILLSIDE CENTER, INC., INDIVIDUALLY, AND TRADING AS MILLSIDE SHOPPING CENTER, AND MEREDITH PAVING CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided November 16, 1981.
*646 Frederick R. Grayer, for plaintiff (Kent, Grayer & Rosenberg, attorneys).
Kenneth G. Andres, Jr., for defendant K-Mart Corporation (William M. Lake, attorney).
Robert A. Baxter, for defendants Amterre Management, Inc. and Millside Center, Inc. (Capehart & Scatchard, attorneys).
*647 Gary Jacob, for defendant Meredith Paving Corporation (Montano, Summers, Mullen & Manuel, attorneys).
HAINES, A.J.S.C.
Plaintiff Jackson slipped and fell upon the sidewalk in front of the defendant, K-Mart's store, of which she was a patron. The sidewalk connected the store to a parking lot. The store and the sidewalk were owned by defendant, Millside Center, Inc. The store, but not the sidewalk, were leased to K-Mart. Defendant, Amterre Management, Inc., managed the entire property and had entered into a contract with a non-party to remove snow and ice from the sidewalk. Jackson has sued the tenant, owner and manager for damages.
The tenant, K-Mart, now moves for summary judgment dismissing all claims against it on the ground that it did not own the sidewalk, had no responsibility for its maintenance and cannot be held liable under existing law. This is a question of first impression in this state, but some guidance is available by analogy from several similar, although distinguishable, cases.
It is a general rule in this state that a landowner has no duty to maintain the sidewalk abutting his land free from a natural accumulation of snow and ice, unless the landowner's own negligence adds some new hazard to the natural one. Taggart v. Bouldin, 111 N.J.L. 464 (E. & A. 1933). Duty is owed neither to the general public nor to the landlord's own tenants. MacGregor v. Tinker Realty Co., 37 N.J. Super. 112 (App.Div. 1955). However, in the interests of public safety and enterprise accountability, exceptions to this rule have long been recognized.
An early case and closely on point is McKeown v. King, 99 N.J.L. 251 (E. & A. 1923). Landlord constructed a drain line from the roof of her building, which ran across a sidewalk and into the gutter. The drain line was protected by a metal cover, flush with the sidewalk. Tenant, a retail store noted on several occasions that the metal cover had slipped, exposing the drain. It merely replaced the cover each time, without making repairs, *648 since the landlord had covenanted to maintain the drain cover under the terms of the lease. A passerby tripped over the displaced drain cover and was injured. The Court of Errors and Appeals found:
(1) When a commercial tenant has actual or constructive notice of a defective condition in the sidewalk regularly used by his business invitees, the duty of a tenant to these invitees to keep the premises in reasonably safe condition, includes a duty to use ordinary care to make the sidewalk reasonably safe. The court did not consider sidewalk ownership or lease as a factor.
(2) The covenant of repair cannot act to relieve the tenant. "This provision of the lease fixes the obligation and duties between the landlord and tenant, but no provision of a lease can absolve a tenant as against a third person from the tenant's duty to maintain a sidewalk in front of the demised premises in a reasonably safe condition." Id at 255.
Accord, Restaino v. Griggs Motor Sales, Inc., 118 N.J.L. 442 (1937). The duty of care to business invitees was generalized in Ratering v. Mele, 11 N.J. Super. 211 (App.Div. 1951), which held that the "operator" of a commercial business was obliged to provide business invitees with reasonably safe premises, including proper means of egress." Id at 213.
Shortly, thereafter, a curious and illogical distinction appeared in the law: the distinction between public and private sidewalks. Over a strong dissent, the court in Moskowitz v. Herman, 16 N.J. 223 (1954), held fast to the common law rule that no property owner could be held liable for a dangerous condition on a public sidewalk, unless he had contributed to the condition. Relying on Moskowitz, the court in Krug v. Wanner, 28 N.J. 174 (1958), regretfully held that the duty to provide safe egress stopped short of the public sidewalk, unless the party charged had exercised some measure of control. Id at 180. However, in the same year, the court readily subjected landlords to a specific duty of keeping private sidewalks reasonably free of natural snow and ice "for the benefit of his tenants and proper invitees". Skupienski v. Maly, 27 N.J. 240 (1958). As a result of these three cases, the "safe egress" theory of liability was again buried under the traditional public/private distinction.
The "safe egress" theory reappeared, however, in a persuasive lower court opinion, Merkel v. Safeway Stores, Inc., 77 N.J. Super. *649 535 (L.Div. 1962). In that case, the only direct route between the store's parking area and the store's entrance was over a public sidewalk abutting the storefront. Plaintiff was injured when he slipped upon an accumulation of snow on the sidewalk. Refusing to follow a rigid public/private distinction, the court declared that the duty of a store operator to provide safe egress for business invitees extended to the public sidewalk when that sidewalk was the only path connecting the store with another part of the operator's premises. Subsequently, in Muzio v. Krauzer, 122 N.J. Super. 221 (App.Div. 1971), the court, constrained by the Moskowitz rule, limited Merkle to the specific facts of the case.
On July 22, 1981, the New Jersey Supreme Court decided the landmark case of Stewart v. 104 Wallace Street, Inc., 87 N.J. 146 (1981), striking down the Moskowitz rule and holding "that a plaintiff has a cause of action against a commercial property owner for injuries sustained on a deteriorated [public] sidewalk abutting that commercial property when that owner negligently fails to maintain the sidewalk in reasonably good condition." Id at 149. The change in the common law rules was based on five public policy considerations:
(1) general non-liability has "left without recourse many innocent parties who suffered serious injuries because of sidewalk defects". Id at 155.
(2) since liability was previously imposed for negligent repair of sidewalks, but not for mere inaction, the law served as disincentive to maintenance, penalizing the owner who tried to help the public by repairing his sidewalk.
(3) the "no liability" rule assumed that municipalities had primary responsibility for sidewalk maintenance and such an assumption does not reflect the reality of modern urban life.
(4) proof difficulties revolving around proper sidewalk construction.
(5) "Finally, there is the obvious arbitrariness of the fact that in accidents occurring within the boundaries of business premises, a plaintiff injured as a consequence of defendant's failure to maintain safe premises would have a cause of action, whereas the same plaintiff injured on a poorly maintained public sidewalk just outside the premises would, under the present law [Moskowitz rule], have no such cause of action." Id at 156-57.
Much of the Stewart holding turned upon the concept of enterprise liability: a commercial property owner using the public sidewalk to accommodate ingress and egress of business *650 invitees cannot receive these benefits without assuming responsibilities. The court did not consider the potential liability of commercial tenants as opposed to commercial property owners and the court specifically refused to decide the question of whether an owner's liability for lack of maintenance extended to a failure to remove natural accumulations of snow and ice. However, what the Stewart court did was clear the way for the development of the "safe egress" rule and provide some policy guidelines for decision.
Returning to the instant case, the defendant commercial tenant's premises were bounded by the abutting sidewalk and parking lot, which were owned by the commercial landowner. The sidewalk provided a direct route between tenant's store and the parking lot used by its business invitees. The tenant would escape liability on the grounds that it did not own the sidewalk and that the owner had assumed responsibility for its maintenance. These circumstances invite the following conclusions of law and policy:
(1) The operator of a commercial establishment must provide reasonably safe premises for business invitees.
(2) No distinction should be made between the operator-owner and the operator-tenant, since in either case it is the operator who is in the best position to discover any dangerous condition.
(3) The duty to provide reasonably safe premises includes a duty to provide a safe path of egress from the premises.
A finding that the duty to provide a safe path stops short of an abutting sidewalk, public or private, known to be used by the commercial enterprise's business invitees, would be arbitrary. It would discourage commercial operators from undertaking necessary corrective measures even though a transient hazard, such as a snow and ice accumulation, would often be easily discovered by an operator. Injured business invitees, having every reason to expect a safe entrance the store they intend to patronize, would otherwise be denied just recoveries. Business tenants, knowing that their customers were traveling a defined route to reach their premises, could ignore the unsafe condition of that route with impunity. Accordingly, it must be held that when *651 the operator of a commercial establishment enjoys the benefits of a sidewalk by permitting a substantial number of business invitees to use it as a route to and from his business premises, he must take reasonable measures to keep that sidewalk free of hazards. If the operator is a tenant, his liability is concurrent with that of the property owner.
The effect of the covenant to maintain is only to allocate costs between the tenant and the property owner. If the owner is under an obligation to maintain the sidewalk and does not, the tenant may do so and then bring an action on the covenant for the cost of maintenance. Lester's Home Furnishers v. Modern Furniture Co., 1 N.J. Super. 365 (Ch.Div. 1948). Similarly, if a landlord negligently fails to make repairs required by the covenant and his tenant is consequently subjected to tort liability, the tenant may impose the consequences of that liability upon the landlord by crossclaim in the tort action or otherwise. As stated in King v. McKeown, supra, however, the covenant absolves neither landlord nor tenant from liability to innocent third parties.