469 So.2d 852 (1985)
Samuel RODGERS and Delores Rodgers, Appellants,
v.
MIAMI DOLPHINS, LTD., Appellee.
No. 84-1872.
District Court of Appeal of Florida, Third District.
May 7, 1985.
Rehearing Denied June 10, 1985.
Abrams, Anton, Robbins, Resnick, Schneider & Mager and Gerald Mager and Scott M. Bernstein, Hollywood, for appellants.
Fowler, White, Burnett, Hurley, Banick & Strickroot and Maria Isabel Gomez, Miami, for appellee.
Before HENDRY, BASKIN and DANIEL S. PEARSON, JJ.
PER CURIAM.
Affirmed.
*853 HENDRY, Judge, dissents.
I respectfully dissent. Mr. and Mrs. Rodgers, plaintiffs in a slip and fall action against defendants, the City of Miami and the Miami Dolphins, Ltd., appeal from a final summary judgment entered in favor of the Miami Dolphins.
The facts giving rise to this action may be briefly stated. At approximately 11 p.m. on October 4, 1981, Mr. Rodgers was leaving the Orange Bowl Stadium after having attended a Miami Dolphins football game. While walking across a parking lot adjacent to the stadium, Mr. Rodgers tripped and fell over some railroad ties which had been concealed by tall grass and shrubbery.
Subsequently, Mr. Rodgers and his wife sued the City of Miami and the Miami Dolphins. The complaint against the Miami Dolphins alleged that they had failed to maintain the premises in other than a dangerous condition; that they had neglected to warn business invitees of the existence of the concealed railroad ties; that the parking lot was poorly lit; and that the Miami Dolphins were liable in money damages to Mr. Rodgers for his injuries and to Mrs. Rodgers for the loss of the care, comfort, society and companionship of her husband.
The Miami Dolphins moved for summary judgment on the grounds that the Miami Dolphins could not be liable as they did not own or control the parking lot. The motion was supported by the affidavit of the Miami Dolphins' President and General Manager which incorporated a contract between the Miami Dolphins and the City of Miami. Paragraph 11 of this contract states:
11. CITY retains all rights and privileges and control of the parking facilities of the ORANGE BOWL, and areas adjacent which are owned by CITY... .
The Rodgers filed a memorandum of law in opposition to the summary judgment motion. The trial court granted the Miami Dolphins' motion and entered final summary judgment for the Miami Dolphins and against the Rodgers.
On appeal the Rodgers assert there were genuine issues of material fact that precluded the entry of summary judgment. First, they argue the contract is ambiguous. While under the contract the city retains control of its parking lots, the contract also provides that the Miami Dolphins will hold the city harmless from any tort liability arising from the use by the Miami Dolphins of the "Orange Bowl premises." Since it is unclear, they argue, whether the parking lots adjacent to the Orange Bowl are included within the meaning of "Orange Bowl premises," then the contract is ambiguous and presents a fact issue which cannot be resolved on summary judgment. The Rodgers further contend that even if the Miami Dolphins exercised no control over the parking lots, they had a duty to warn patrons of the dangerous condition in the lot if they had actual or constructive knowledge of such condition.
The Miami Dolphins argue that the contract between the Miami Dolphins and the City of Miami is unambiguous in providing that ownership and control of the parking lots rests with the City. I agree that the contract clearly states that ownership and control of the city-owned parking facilities of the Orange Bowl rests with the city. It is axiomatic that where contract language is clear, plain and certain, and not subject to conflicting inferences, then the construction of the contract is one of law and belongs to the courts. Peacock Construction Co. v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla. 1977); Friedman v. Virginia Metal Products Corp., 56 So.2d 515 (Fla. 1952); Royal Continental Hotels, Inc. v. Broward Vending, Inc., 404 So.2d 782 (Fla. 4th DCA 1981).
However, I find that despite the contract's unambiguous provisions, the entry of final summary judgment in favor of the Miami Dolphins and against the Rodgers was incorrect as the Miami Dolphins may have had a duty to warn their patrons of the dangerous condition in the parking lot.
I rely on Combs v. Aetna Life Insurance Co., 410 So.2d 1377 (Fla. 4th DCA 1982), in *854 reaching this conclusion.[1] In Combs, the court held that control over the parking lot was not the sole basis for liability in a slip and fall action. The slip and fall in Combs occurred when a restaurant patron tripped over an elevated divider in a shopping center parking lot. The court found that the restaurant owner, a tenant, had a duty to warn his patrons of the dangerous condition if he had actual or constructive knowledge of the condition. Generally, a landlord is under a duty of reasonable care to all lawful visitors of his property, where the premises are under his control, but the landlord's liability does not operate to relieve a tenant of the duty to warn persons of dangerous conditions within the tenant's knowledge in areas appurtenant to his premises. See Hopkins v. F.W. Woolworth Co., 11 Mass. App. 703, 419 N.E.2d 302 (1981); Monterosso v. Gaudette, 8 Mass. App. 93, 391 N.E.2d 948 (1979). Further support for a lessee's responsibility for an area appurtenant to his leasehold interest is found in Restatement (Second) of Property § 17.3 (1977), which provides in comment (e), as follows:
e. Effect of tenant's knowledge of dangerous condition... . The tenant may, for example, know that the common entrance to the apartment or office he has leased has become dangerous for use because of the landlord's failure to maintain it in a safe condition. His knowledge may subject him to liability to his own licensees if he fails to warn them of the danger... .
The rationale for my dissent in this cause was laid out succinctly in Jackson v. K-Mart Corp., 182 N.J. Super. 645, 442 A.2d 1087 (Law Div. 1981). The facts in Jackson involved a slip and fall which occurred on a public sidewalk outside the K-Mart store. In finding the tenant liable for the plaintiff/patron's injuries, the court stated:
(1) The operator of a commercial establishment must provide reasonably safe premises for business invitees.
(2) No distinction should be made between the operator-owner and the operator-tenant, since in either case it is the operator who is in the best position to discover any dangerous condition.
(3) The duty to provide reasonably safe premises includes a duty to provide a safe path of egress from the premises.
442 A.2d at 1090. The court further stated that without this rule,
[b]usiness tenants, knowing that their customers were traveling a defined route to reach their premises, could ignore the unsafe condition of that route with impunity. Accordingly, it must be held that when the operator of a commercial establishment enjoys the benefits of a sidewalk by permitting a substantial number of business invitees to use it as a route to and from his business premises, he must take reasonable measures to keep that sidewalk free of hazards.
442 A.2d at 1090-91.
Sub judice, whether the parking lot where the slip and fall occurred was appurtenant to the Orange Bowl, and whether the Miami Dolphins had a duty to warn of the condition and had actual or constructive knowledge thereof are, I believe, material factual issues which preclude the entry of summary judgment.
For the reasons stated, I would reverse the final summary judgment in favor of the Miami Dolphins and remand the cause for further proceedings.
NOTES
[1] I do not find that reliance on Combs in the instant case is precluded by this court's opinion in Federated Department Stores, Inc. v. Doe, 454 So.2d 10 (Fla. 3d DCA 1984). The factual distinctions which were the basis for rejecting Combs in Federated Department Stores, i.e., that liability was sought to be imposed on a lessee of business premises for criminal acts occurring in an area contractually under the lessor's exclusive control, are not present here as the lessee's warning in Federated Department Stores would not have prevented the harm.