FISHER, Circuit Judge,
dissenting.
The New Jersey courts have placed a broad duty of care on proprietors to ensure the safe ingress and egress of their patrons. Because I believe that the New Jersey Supreme Court would find that Lowe’s owes Holmes a duty of care in the circumstances presented here, I respectfully dissent.
The landmark decision imposing a broad duty of care on store proprietors is Stewart v. 104 Wallace Street Inc., 87 N.J. 146, 432 A.2d 881 (1981). In Stewart, the New Jersey Supreme Court rejected a traditional “no liability” rule and held that “commercial landowners are responsible for maintaining in reasonably good condition the [public] sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so.” Id. at 887. In explaining its rationale, the court articulated some of New Jersey’s public policy considerations. According to the court, the liability rule would (1) “provide a remedy to many innocent plaintiffs,” (2) “give owners of abutting commercial property an incentive to keep their sidewalks in proper repair,” and (3) “eliminate ... arbitrariness.” Id. The court also noted that owners are in the best position to inspect and discover sidewalk defects: “Logic and common sense also support the imposition of this duty, inasmuch as owners of abutting property are in an ideal position to inspect sidewalks and to take prompt action to cure defects.” Id. at 888. See also Mirza v. Filmore Corp., 92 N.J. 390, 456 A.2d 518, 521 (1983) (extending Stewart to cover snow and ice removal).
The lower New Jersey courts have also placed a broad duty of care on store proprietors. See, e.g., Nelson v. Great Atl. & Pac. Tea Co., 48 N.J.Super. 300, 137 A.2d 599, 603 (1958) (extending a proprietor’s duty of care to the supermarket parking lot); Merkel v. Safeway Stores, Inc., 77 N.J.Super. 535, 187 A.2d 52, 55 (1962) (extending a proprietor’s duty of care to the public sidewalk connecting the parking area to the store entrance). But see, e.g., Chimiente v. Adam Corp., 221 N.J.Super. 580, 535 A.2d 528, 529-30 (1987) (declining to extend the duty of care to a pathway created by the trespassing public on a grassy slope adjacent to a shopping center but held by a separate owner). In particular, in Warrington v. Bird, 204 N.J.Super. 611, 499 A.2d 1026 (1985), the New Jersey Appellate Division held that a proprietor’s duty of care to its patrons extended to a roadway when patrons were required to cross the roadway to reach the proprietor’s parking lot. The court explained, “the critical element should not be the question of the proprietor’s control over the area to be traversed but rather the expectation of the invitee that safe passage will be afforded from the parking facility to the establishment to which they are invited.” Id. at 1029-30.
Against this backdrop of proprietor liability, we are presented with a discrete sub-issue: we must determine whether the Lowe’s store’s status as a tenant affects any duty of care it might otherwise have owed to its customers. Since the New Jersey Supreme Court has not yet ruled on this question, we are obliged to predict how it would resolve the issue. See Hunt v. U.S. Tobacco Co., 538 F.3d 217, 220 (3d Cir.2008). As the majority states, “[i]n the absence of an authoritative pronouncement by a state’s highest court, we may give serious consideration to the opinion of an intermediate appellate court.” Aetna Cas. & Sur. Co. v. Farrell, 855 F.2d 146, 148 (3d Cir.1988). Fortunately, several New Jersey superior court cases are illustrative. A New Jersey trial court, Jackson v. K- *126 Mart Corp., 182 N.J.Super. 645, 442 A.2d 1087 (1981), and appellate court, Antenucci v. Mr. Nick’s Mens Sportswear, 212 N.J.Super. 124, 514 A.2d 75 (1986), have extended the Stewart liability rule to cover commercial tenants. However, another New Jersey trial court, Barrows v. Trustees of Princeton University, 244 N.J.Super. 144, 581 A.2d 913 (Law Div.1990), and a federal district court applying New Jersey law, Kantonides v. KLM Royal Dutch Airlines, 802 F.Supp. 1203 (D.N.J.1992), have since carved out an exception to the liability rule for multi-tenant facilities.
In Jackson, the plaintiff slipped and fell on a sidewalk connecting a K-mart store, of which she was a patron, to a parking lot. 442 A.2d at 1088. K-mart, a lessee, filed a motion for summary judgment on the grounds that it did not own the sidewalk and held no responsibility for its maintenance. Id. The New Jersey Law Division disagreed, holding that K-mart’s liability was concurrent with that of the property owner. Id. at 1091. Looking to Stewart for guidance, the court made three “conclusions of law and policy”:
“(1) The operator of a commercial establishment must provide reasonably safe premises for business invitees.
(2) No distinction should be made between the operator-owner and the operator-tenant, since in either case it is the operator who is in the best position to discover any dangerous condition.
(3) The duty to provide reasonably safe premises includes a duty to provide a safe path of egress from the premises.”
Id. at 1090. The court explained that to hold otherwise “would discourage commercial operators from undertaking necessary corrective measures even though a transient hazard, such as a snow and ice accumulation, would often be easily discovered by an operator.” Id.
The New Jersey Appellate Division followed suit in Antenucci. As in Jackson, the plaintiff in Antenucci fell on a sidewalk in front of a proprietor-tenant, a sporting goods store. 514 A.2d at 75-76. Finding that Stewart “did not make a distinction between the owner and a tenant in exclusive possession of the commercial premises” and that the Stewart public policy considerations applied in both instances, the court held, “we find sufficient direction in Stewart to impose upon a lessee in exclusive possession of premises abutting a public sidewalk[ ] a duty to keep the walkway in good repair for the benefit of pedestrians.” Id. at 77. The court emphasized that the rule “applies only to a commercial tenant who is in exclusive possession of the premises abutting the sidewalk.” Id.
Four years later, the New Jersey Law Division in Barrows carved out a logical exception to the tenant liability rule. Unlike Jackson and Antenucci, where the plaintiffs each fell in front of a single store, the plaintiff in Barrows slipped and fell on a patch of ice on a mall sidewalk. 581 A.2d at 914. Although the plaintiff was in front of a particular store when he fell, he had shopped in several of the mall’s stores during the course of his trip. Id. Under these circumstances, the Barrows court cited Antenucci with approval but declined to apply its holding in the mall context:
“Because tenants in a multi-tenant shopping mall will not, absent a contractual obligation, have control or maintenance responsibilities for common walkways or sidewalks, this court concludes that the duties imposed by Stewart and Antenucci do not extend to tenants in multitenant shopping complexes.”
Id. at 915. Accordingly, the court granted the defendants’ motions for summary judgment. Id.
The only other court to apply a multitenant exception in a published opinion is *127 the federal district court in Kantonides, a case involving a very unique set of facts. In Kantonides, the plaintiffs filed suit against an airline company, which was to provide them with round-trip air transportation, after the plaintiffs fell on a moving walkway while proceeding to a connecting flight. 802 F.Supp. at 1205. The moving walkway was in the common area of a terminal building that was owned, maintained, and controlled by the airport, not the specific airline company. Id. at 1206. Citing both Antenucci and Barrows with approval, the district court held that “[the airline] is a commercial tenant and does not ‘exclusively possess’ the common area of [the airport] where the moving walkway is located” and granted the airline’s motion for summary judgment. Id. at 1214-16. The court explained that the opposite conclusion would be “impractical”: “If [the airline] were found to owe passengers a duty of care with regard to distant premises that it does not own, lease, control or maintain, there would be no logical end to that duty.” Id. at 1215.
Examining these opinions against the backdrop of New Jersey case law, I would hold that the New Jersey Supreme Court would find Lowe’s liable and not apply the multi-tenant exception articulated in Barrows and applied in Kantonides. Although Lowe’s may technically be a part of a multi-tenant complex, the Maple Shade Shopping Center does not resemble the Barrows or Kantonides facilities: Lowe’s was in “exclusive possession” of its building — albeit in a larger, shared shopping area — while the tenants in Barrows shared possession of one mall building, and the airlines in Kantonides shared possession of one airport terminal. See Antenucci, 514 A.2d at 77. The Barrows and Kantonides facilities also housed a much larger number of tenants in much closer proximity than the Maple Shade Shopping Center.
The facts of the instant case are much more similar to those presented in Jackson. Like most K-mart and Lowe’s stores, Lowe’s occupies a separate building that sits at a distance from the three other tenants in the Maple Shade Shopping Center. Its parking lot is defined and set apart by “cart corrals” that house Lowe’s carts and are marked by Lowe’s signs, which demonstrates that the tenants have jointly inspected and exercised control over separate sections of the parking area. The cart corrals also signal to the customer that Lowe’s is a separate entity with its own responsibilities, leading Lowe’s patrons to “expect[ ] ... that safe passage will be afforded from the parking facility to the [Lowe’s] to which they are invited.” Warrington, 499 A.2d at 1029. In these circumstances, a New Jersey court would likely hold that there is no distinction between proprietor-owners and proprietor-tenants. A contrary holding could lead to an absurd result, as a K-mart or Lowe’s store’s duty of care would depend on whether the store stood alone on a highway or within a few hundred feet of another tenant in a “shopping center.”
The majority states that “a Lowe’s customer ... could park anywhere in the lot” and that “there is not one ‘defined route’ from the lot to the store.” I disagree. Since the Maple Shade Shopping Center has only three distinct stores — a Lowe’s, a fitness center, and a mattress store — its customers most likely park directly in front of the single store they plan to visit and do not meander through the parking lot on an extended shopping trip that encompasses multiple stops. Therefore, the “defined route” extends from the parking lot in front of Lowe’s to the Lowe’s store entrance.
The public policy considerations articulated by the New Jersey Supreme Court in Stewart also support a finding of liability *128 in the present case. First, the imposition of a duty of care will provide a remedy to Holmes, who, other than his failure to examine the public records to determine the owner of the Maple Shade Shopping Center, is an “innocent plaintiff.” Stewart, 432 A.2d at 887. More importantly, allowing plaintiffs like Holmes to pursue their claims gives Lowe’s “an incentive to keep [its parking lot] in proper repair.” Id. This makes sense. Even beyond owners, who may or may not keep watch over their property, tenants “are in an ideal position to inspect [parking lots] and to take prompt action to cure defects.” Id. at 888. To hold otherwise would allow tenants to turn a blind eye to dangerous parking lot or sidewalk conditions with the assurance that they will not be held responsible. Finally, liability will “eliminate ... arbitrariness” by placing plaintiffs who file suit against proprietor-owners and those who file suit against proprietor-tenants in the same position. Id. at 887.
The majority expresses a legitimate concern that “the imposition of a duty on the tenants would result in duplicative effort and interfere with the landlord’s maintenance program.” Keeping in mind that we are charged with predicting New Jersey Supreme Court decisions, not with fashioning a preferable rule, I disagree that this concern outweighs those I have just expressed. The imposition of a duty of care will probably not incite tenants to engage in their own competing maintenance programs. Rather, tenants will be encouraged to keep a watchful eye over leased premises and give prompt notification to landlords when problems arise. In the event that a tenant is held liable for its patrons’ injuries, the tenant will have the option of pursuing an indemnification action against the responsible landlord, a point that the majority opinion fails to stress.
Therefore, for the foregoing reasons, I respectfully dissent.