**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4620-18T2

KAMAL DASWANI,

     Plaintiff,

v.

OUTBACK STEAKHOUSE,

     Defendant-Appellant,

and

HARTZ MOUNTAIN
INDUSTRIES,

     Defendant-Respondent,

and

CARLTON GROUP, and
MARRIOT INTERNATIONAL,

     Defendants,

and

HARTZ MOUNTAIN
INDUSTRIES, INC.,

Defendant/Third-Party
Plaintiff-Respondent,

v.

OUTBACK/METROPOLIS-I
LIMITED PARTNERSHIP

Defendant/Third-Party
Defendant-Appellant

and

CANETE SNOW
MANAGEMENT, INC.,

Third-Party Defendant.
_____

Argued October 1, 2020 – Decided December 7, 2020

Before Judges Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1876-17.

Norman W. Briggs argued the cause for appellant (Briggs Law Office, LLC, attorneys; Norman W. Briggs, on the briefs).

Gerard H. Hanson argued the cause for respondent Hartz Mountain Industries (Hill Wallack LLP, attorneys; Gerard H. Hanson and Todd J. Leon on the brief).

PER CURIAM

A-4620-18T2

This appeal arises from a slip-and-fall accident that occurred after plaintiff Kamal Daswani,[1] a patron of appellant Outback Steakhouse (Outback), was seriously injured while exiting the restaurant. Plaintiff fell on black ice on an adjacent sidewalk owned and maintained by Outback's landlord, respondent Hartz Mountain Industries, Inc. (Hartz). Outback appeals the trial court's October 26, 2018 orders that: (1) denied its motion for summary judgment as to liability; and (2) granted Hartz's cross-motion for indemnification.[2] The judge denied Outback's motion for reconsideration. Having reviewed the record and considering the applicable law, we affirm in part and reverse in part.

We discern the following facts from the record. On March 1, 2002, Hartz and Outback entered into a written lease agreement pursuant to which Outback leased a portion of Hartz's property to operate a restaurant in a large commercial complex located in Secaucus.

Section 6.2 of the lease agreement states:

> [Hartz] covenants and agrees to keep and maintain, or cause to be kept and maintained, the exterior of the Building . . . the Building Parking Garage, and the Development Common Areas and Building Common

---

[1] Outback and Hartz have settled plaintiff's claims against them, and plaintiff is not participating in this appeal.

[2] By the same order, the trial judge also denied Hartz's cross-motion for summary judgment on the issue of liability. Hartz has not appealed that ruling.

Areas, (including but not limited to landscaping, sprinkler systems, pavement and striping of parking areas, and adequate lighting in the Common Area until at least 1:00 a.m.) in good condition and repair, in a neat and clean condition and in compliance with all applicable Legal Requirements. (Aa99; Ab4).

Section 1.1(iii) of the lease agreement defines "Building Common Areas" as:

All interior and exterior areas in the Building and on the Land, excluding Development Common Areas, that [Hartz] makes available for the common use of all the tenants, invitees, and occupants of the Building. The Building Common Areas shall include, without limitation, landscaped areas, sidewalks, and covered and uncovered walkways, if any.

Section 7.1 of the lease agreement establishes Outback's insurance obligations:

[Outback] shall maintain the following insurance: (a) commercial public liability insurance in respect of the Premises and the conduct and operation of business therein, having limits of not less than $5,000,000.00 combined single limit per occurrence for bodily injury or death to any one person and for bodily injury or death to any number of persons in any one occurrence, and for property damage . . . The certificates of insurance to be delivered to [Hartz] by [Outback] shall name [Hartz] as an additional insured . . .

Section 7.3 of the lease agreement sets forth mutual indemnification clauses.

The first paragraph of section 7.3 states:

[Outback] shall indemnify and hold harmless [Hartz] . . . from and against any and all claims arising from or in

connection with . . . (b) any act, omission or negligence of [Outback] or . . . (c) any accident, injury or damage whatever (unless caused solely by [Hartz's] negligence) occurring in the Premises . . .

The second paragraph of section 7.3 states, in part, that:

[Hartz] shall indemnify and hold harmless [Outback] . . . from and against any and all claims arising from or in connection with any willful act or negligence of [Hartz] or its agents in connection with the conduct or management of the Common Areas together with all costs, expenses and liabilities incurred in or in connection with each such claim or action or proceeding brough thereon, including, without limitation, reasonable attorneys' fees and expenses . . . .

After the parties executed the lease, Outback wished to "self-insure" rather than obtain a standard commercial public liability policy as required under the lease agreement. To resolve this issue, the parties entered into a superseding indemnification agreement on August 10, 2005.

The indemnification agreement states that "the intent of this Agreement [is] to provide [Hartz] the same coverage, as to the Self-Insured Claims, as [Hartz] would have (as an additional insured under [Outback's] Liability Insurance) as to Insured Claims." [3] The indemnification agreement provides that "[Outback] agrees to

---

[3] The Indemnification Agreement defined "Claim" as "any claim that is covered by [Outback's] Liability Insurance, determined as if there was no Self-Insured Amount." It defined "Self-Insured Claim" as "any Claim to the extent that the

indemnify and defend [Hartz] (or provide for the indemnification and defense of [Hartz]) from and against any Claim which is the subject of any complaint naming both [Hartz] and [Outback] as defendants, to the extent that such Claim is a Self-Insured Claim . . . "

On January 24, 2016, plaintiff was staying at the Marriott located in the same plaza as Outback. During plaintiff's stay, there was a "huge storm," and it "had been snowing the whole weekend." Nearly twenty-seven inches of snow had accumulated over the weekend. In the early afternoon, plaintiff left his hotel room to eat lunch at Outback. After finishing, plaintiff asked an Outback employee which door was closest to the Marriott. The worker specified the "southern" exit, at which point a different Outback employee opened that door for plaintiff. That employee did not give plaintiff any warnings as he exited the restaurant.

Upon exiting the building, plaintiff slipped and sustained a serious fracture of his right ankle. Plaintiff testified that it "just happened immediately." In plaintiff's answers to interrogatories, he states that he "took one step outside the door and slipped on black ice" which caused him to fall. Plaintiff states in his answers to

---

Claim falls within the Self-Insured Amount." It defined "Insured Claim" as "any Claim to the extent not a Self-Insured Claim."

interrogatories that the "weather was poor outside because of snow but [he] slipped on ice not snow in the immediate area outside of the entrance/exit" of Outback.

Prior to his fall, plaintiff did not observe what caused him to fall and did not "see anything other than a clear pathway with nothing" on it. Although there was no snow on the pathway where plaintiff fell, there was still snow on the ground. There was no observable rock salt or sand on the pathway.

A police officer and EMT were dispatched to the location, and upon arrival, the police officer told plaintiff that "he saw some black ice on the pathway," which he observed was "the same color as the pathway." Plaintiff was transported, by ambulance, to Meadowlands Hospital where he underwent surgery to correct his fractured ankle.

Plaintiff filed a complaint against, among others, Outback and Hartz on May 5, 2017. At the close of discovery, Outback filed a motion for summary judgment on September 14, 2018, which sought to dismiss plaintiff's complaint for plaintiff's failure to identify the cause of his fall. Hartz filed a cross-motion for summary judgment on the same basis. In addition, Hartz sought indemnification from Outback pursuant to the terms of the August 10, 2005 indemnification agreement.

The judge denied Outback's motion for summary judgment, finding Outback owed plaintiff a duty of care because plaintiff was a business invitee and Outback

was open to the public. The judge noted that, prior to plaintiff's accident, twenty-seven inches of snow had accumulated. The judge also found that the pathway was clear of snow, but no rock salt was on the surface of the ground where plaintiff fell. The judge determined that "a jury can find that based on prior weather conditions, Outback had constructive notice" of the condition that caused plaintiff's fall. The judge concluded that summary judgment was not appropriate because a reasonable fact finder could "conclude that black ice or at the very least an icy condition caused plaintiff" to slip and fall.

For similar reasons, the motion judge also denied Hartz's cross-motion for summary judgment as to liability. The judge found that the lease agreement required Hartz to maintain the exterior of the building and the building's common areas. The judge again determined that constructive notice existed based on the amount of snowfall that had occurred over the weekend.

The motion judge granted summary judgment requiring Outback to defend and indemnify Hartz against any potential verdict or settlement. The judge noted that the lease agreement was updated in 2005 when the indemnification agreement replaced the insurance provisions. The judge observed that the indemnification agreement required "Outback to indemnify and defend Hartz . . . from and against any claim which is subject of any complaint naming both Hartz and Outback as

A-4620-18T2

defendant[s], to the extent that such claim is a self-insured claim."  Consequently, the judge granted Hartz's request for indemnification and ordered Outback to defend and indemnify Hartz.

On November 15, 2018, Outback filed a motion for reconsideration.  The judge found Outback was obligated to indemnify Hartz for Hartz's own negligence because the "agreement makes no mention or exclusion to Hartz's negligence. The parties could have drafted the indemnification agreement differently to exclude claims for Hartz's negligence."  Ultimately, the judge denied the motion.  The parties subsequently settled the underlying matter with plaintiff, and Outback reserved the right to appeal the judge's October 26, 2018 and January 16, 2019 orders.

On appeal, Outback raises the following arguments for our consideration:

POINT I

PLAINTIFF PRESENTED NO EVIDENCE TO MEET HIS BURDEN OF PROOF OF NEGLIGENCE ON EITHER OUTBACK OR HARTZ.

POINT II

OUTBACK HAD NO DUTY OR RESPONSIBILITY TO MAINTAIN THE SIDEWALK WHERE PLAINTIFF FELL.

POINT III

PURSUANT TO THE 2002 LEASE AGREEMENT AND 2005 INDEMNIFICATION AGREEMENT, HARTZ IS

9

REQUIRED TO DEFEND AND INDEMNIFY OUTBACK FOR HARTZ'S OWN NEGLIGENCE.[4]

POINT IV

THE 2002 LEASE AGREEMENT AND 2005 INDEMNIFICATION AGREEMENT DO NOT REQUIRE OUTBACK TO INDEMNIFY HARTZ FOR HARTZ'S NEGLIGENCE.

POINT V

THE [KIEFFER V. BEST BUY, 205 N.J. 213 (2011)] CASE WHICH HARTZ RELIES HEAVILY IN ITS CROSS-MOTION FOR SUMMARY JUDGMENT IS INAPPLICABLE.

We address these issues in turn.

A.

The standard of review for a grant of summary judgment is de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, "summary judgment will be upheld if there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Ibid (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)); see also R.

---

[4] This argument was not raised below and therefore we do not address it. See Housing Auth. of Newark v. Sagner, 142 N.J. Super. 332, 337 (App. Div. 1976) ("It is well settled that, absent a compelling reason, appellate courts will decline to consider questions or issues not properly presented at the trial level when an opportunity for such a presentation is available.").

4:46-2(c).  We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact[-]finder to resolve the alleged disputed issue in favor of the non-moving party."  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). If there is no issue of fact, we give no special deference to the trial court's rulings on matters of law.  Templo Fuente, 224 N.J. at 199 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We reject Outback's argument that the motion judge erred in denying its motion for summary judgment on the issue of liability.  It is well-settled that common law imposes a duty of care on a commercial tenant for injuries located on an abutting or adjacent sidewalk.  See Nielsen v. Wal-Mart Store No. 2171, 429 N.J. Super. 251, 258 (App. Div. 2013) ("we have imposed sidewalk liability on not just commercial owners but also their tenants"); see also Jackson v. K-Mart Corp., 182 N.J. Super. 645, 651 (Law Div. 1981) (where an "operator of a commercial establishment enjoys the benefits of a sidewalk by permitting a substantial number

of business invitees to use it as a route to and from his business premises, he must take reasonable measures to keep that sidewalk free of hazards.").[5]

Here, the record reveals that immediately upon leaving the building and stepping onto the adjacent sidewalk, plaintiff slipped and fell on black ice. In plaintiff's answers to interrogatories, he states that "[he] took one step outside the door and slipped on black ice causing [him] to fall." The judge correctly found that Outback had a duty to maintain a safe premises, which included areas of ingress and egress, see Jackson, 182 N.J. Super. at 650-51, and there were issues of fact concerning whether Outback breached its duty that precluded summary judgment.

In that regard, we conclude, as did the motion judge, that there was sufficient evidence from which a reasonable jury could find that Outback had constructive notice of the dangerous condition that caused plaintiff's injuries. "A defendant has constructive notice when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been

_____

[5] Outback's argument that it owed no duty to plaintiff because Hartz covenanted to maintain the common areas is without merit. See Kandrac v. Marrazzo's Mkt., 429 N.J. Super. 79, 88 (App. Div. 2012) ("[w]e recognize that the covenant in the lease regarding the landlord's obligation to maintain the common areas of the shopping center in good operating condition and repair does not relieve [defendant/tenant] of all duties to its customers regarding ingress and egress"); see also Jackson, 182 N.J. Super. at 651 ("[i]f the operator is a tenant, his liability is concurrent with that of the property owner.").

reasonably diligent.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016) (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). Viewing the evidence in the light most favorable to plaintiff, see Brill, 142 N.J. at 540, the inclement weather conditions over the weekend; the absence of salt or sand on the sidewalk; the fact that the black ice was observed by the responding police officer; and plaintiff's testimony that the ice was located immediately adjacent to the door through which he exited the restaurant, taken together was sufficient to raise an issue of fact that Outback knew or should have known of the ice, and that it was negligent in failing to take precautions to address the dangerous condition. See Pareja v. Princeton Int'l Props., 463 N.J. Super. 231, 252-54 (App. Div. 2020).

B.

Outback also appeals the trial court's order requiring it to indemnify and defend Hartz in connection with this matter. Outback argues that there is no clear, unequivocal language in the indemnification agreement that requires it to indemnify Hartz for Hartz's negligence. We agree.

When a trial court's decision turns on its construction of a contract, appellate review of that determination is de novo. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014); see also Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011).

"Indemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally." Ramos v. Browning Ferris Indus., Inc., 103 N.J. 177, 191 (1986). "The objective in construing a contractual indemnity provision is the same as in construing any other part of a contract – it is to determine the intent of the parties." Kieffer, 205 N.J. at 223 (citing Mantilla v. NC Mall Assocs., 167 N.J. 262, 272 (2001)).

It is well-established that "a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." Ramos, 103 N.J. at 191; see also Mantilla, 167 N.J. at 275 ("absent explicit contractual language to the contrary, an indemnitee who has defended against allegations of its own independent fault may not recover the costs of its defense from an indemnitor."). The Court later reaffirmed the Mantilla "'bright line' rule requiring 'explicit language' that indemnification and defense shall include the indemnitee's own negligence." Azurak v. Corp. Prop. Inv'rs, 175 N.J. 110, 112 (2003) (quoting Azurak v. Corp. Prop. Inv'rs, 347 N.J. Super. 516, 523 (App. Div. 2002)).

We conclude that the trial court erred in requiring Outback to indemnify Hartz because it relied on the fact that "the 2005 indemnification agreement makes no mention or exclusion to Hartz's negligence. The parties could have drafted the

indemnification agreement differently to exclude claims for Hartz's negligence." (emphasis added). The Azurak rule, however, is one of inclusion, not exclusion, 175 N.J. at 112. The failure to include or reference Hartz's own negligence as encompassed by the indemnity provision is fatal to Hartz's claim. See Ramos, 103 N.J. at 191; see also McCabe v. Great Pacific Century Corp., 236 N.J. Super. 488, 492-93 (App. Div. 1989).

Even if we look to the indemnity provisions in the 2002 lease as evidence of Hartz's intent when it executed the 2005 indemnification agreement, no other result will follow. Section 7.3 of the lease agreement states:

> [Outback] shall indemnify and hold harmless [Hartz] . . .
> from and against any and all claims arising from or in
> connection with . . . (b) any act, omission or negligence of
> [Outback] or . . . (c) any accident, injury or damage
> whatever (unless solely caused by [Hartz's] negligence)
> occurring in the Premises . . .
>
> [(emphasis added)].

In light of Hartz's non-delegable duty as landlord to maintain the sidewalk where plaintiff was injured, see Vasquez v. Mansol Realty Associates, Inc., 280 N.J. Super. 234, 238 (App. Div. 1995), as well as its contractual obligation to keep and maintain the sidewalk in good condition, it is entirely plausible that a jury may have found Hartz entirely at fault. By settling the claim, and thereby obviating any

15

allocation of fault by the trier of fact, there is simply no basis to require Outback to indemnify Hartz for some unknown percentage of fault.

To the extent we have not addressed any of the remaining arguments raised by the parties, we conclude that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4620-18T2