**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2344-23

ELLEN ENGLISH,

     Plaintiff-Respondent/
     Cross-Appellant,

and

KEITH ENGLISH,

     Plaintiff-Respondent,

v.

LINCE GROUP, LLC,

     Defendant-Appellant/
     Cross-Respondent,

and

TOWNSHIP OF SCOTCH PLAINS,

     Defendant-Respondent,

and

PAT'S AMERICAN BUTCHER SHOP
LLC, PAT'S ALL AMERICAN

BUTCHER, FRANK'S MEAT MARKET,
and SALON DESANDO, LLC,

        Defendants.

_____

Argued December 15, 2025 – Decided March 6, 2026

Before Judges Sabatino and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0219-20.

Robert T. Gunning argued the cause for appellant (Morrison Mahoney LLP, attorneys; Robert T. Gunning, of counsel and on the briefs).

Patrick J. Flinn argued the cause for respondent/cross-appellant (Levinson Axelrod, PA, attorneys; Patrick J. Flinn, on the briefs).

Richard J. Guss argued the cause for respondent Township of Scotch Plains (DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, PC, attorneys; Richard J. Guss, on the brief).

PER CURIAM

Defendant Lince Group, LLC, appeals from court orders denying its motion for summary judgment and denying its dismissal motion at trial, the trial court determining defendant had a duty to maintain an alleged defective sidewalk area abutting its commercial property causing plaintiff[1] Ellen English

_____

[1] We refer to Ellen English as plaintiff as Keith English's claim is per quod only.

2

A-2344-23

to trip, fall and sustain injuries. Defendant further appeals a jury verdict in favor of plaintiffs. Defendant contends the trial court erred in determining it had a duty to maintain the portion of a concrete sidewalk where plaintiff fell and also contends the jury's damages award was excessive. Both defendant and plaintiff cross-appeal from the trial court's entry of a directed verdict dismissing their claims against defendant Township of Scotch Plains ("Township"). After our review of the record and applicable legal principles, we reverse the order dismissing the claims against the Township and affirm the remaining orders and judgment.

I.

In 2016, defendant purchased a commercial property in the Township known as 1812 to 1826 East Second Street. When facing the entrance, to the immediate left of the building was Tarquin's Alley, an asphalt-paved, two-lane driveway/street dedicated as a public right of way by the Township. Tarquin's Alley provided access to a public parking lot situated behind defendant's building. Historical records indicate that in 2000, a predecessor-in-title to defendant conveyed the land underlying Tarquin's Alley to the Township, resulting in defendant's property line being set at the left outside wall of its

3

commercial building. Unlike the front of the building on East Second Street, the Tarquin's Alley side did not have a concrete sidewalk.

The sidewalk in front of defendant's building consisted mainly of large concrete slabs. There was also a section with brick pavers between the concrete blocks and the curb on East Second Street, wherein a tree was positioned near Tarquin's Alley. Over time, the roots of this tree allegedly displaced the surrounding brick pavers.

A notable feature was that both the concrete slabs and the pavers adjacent to Tarquin's Alley encroached approximately 49.5 inches into the alley before meeting the asphalt and a concrete driveway portion of Tarquin's Alley where it intersected with East Secon Street. Evidence exchanged in discovery revealed a 17 inch wide raised lip where the edge of the concrete slab nearest the pavers met the driveway apron/asphalt of Tarquin's Alley. The elevation difference between the sidewalk slab and the driveway apron ranged from one and 3/8 inches to one and 5/8 inches.

Per Township Ordinance §15-2.8, every property owner, tenant, lessee, and occupant are required to keep the sidewalk, flagging, and curbing in front of their premises clear of obstructions and nuisances and prevent conditions that may become dangerous or prejudicial to life and health.

A-2344-23

On June 22, 2019, plaintiff was running along the sidewalk on East Second Street. While crossing Tarquin's Alley toward defendant's building, she caught her right foot on the concrete lip and fell, sustaining a right wrist injury when her hand struck the ground in an attempt to break her fall. She was assisted by bystanders and was taken to Urgent Care by her family, where an x-ray confirmed a broken right wrist.

Five days later, plaintiff underwent surgery, where the orthopedic surgeon inserted a bar and eight screws to reconstruct her fractured wrist. Post-operation, she attended occupational therapy three times a week from July through October 2019, gradually regaining some mobility but claimed she never returned to pre-injury status. During her recovery, plaintiff asserted she developed "trigger finger" in her left-hand thumb due to compensation and a frozen right shoulder owing to inactivity, resulting in total loss of mobility of her right arm. She claimed physical therapy and cortisone injections helped, but she did not fully recover motion in her shoulder and continued to experience thumb issues.

Due to persistent pain and plateaued improvement by early 2020, plaintiff consulted a different orthopedist, who performed surgery to remove the hardware in her wrist with hope of relieving the pain. Improvement was

5

temporary as her pain returned, her grip remained weak, and six months later, fusion surgery was suggested as the only remaining option, but this surgery was never performed.

Following the accident, Tille Yu, defendant's property manager, learned of the incident and raised concerns with Township officials about a pre-existing tree-root-induced issue with the sidewalk pavers. She documented the paver problem in emails and attached photos but did not mention or photograph the concrete lip where plaintiff fell. The Township's Director of Public Works, Frank DiNizo, stated this was the first formal notification of any tree-root or sidewalk issue in that area.

Plaintiff sued defendant for negligent sidewalk maintenance, claiming the defect caused her injuries. The complaint was later amended to include the Township and tenants of the building as defendants. The tenant-defendants were dismissed or defaulted prior to trial.

On September 8, 2021, defendant moved for summary judgment, arguing that it owed no duty to plaintiff as it was not responsible for maintaining the portion of the concrete slab where plaintiff tripped because it was not directly in front of its commercial building. Defendant contended that the Township was responsible for the maintenance of the trip site. In response, the Township

6

maintained that defendant was responsible for the maintenance of the abutting sidewalk regardless of any property lines.

On December 7, 2021, the trial court denied defendant's motion. In a written decision, it found that there was a genuine issue of material fact as to "whether [defendant] . . . or [the Township] was negligent in maintaining the depressed driveway apron or raised sidewalk abutting [defendant's] . . . property." It was persuaded that "the issue of liability as to the location and cause of the trip and fall is a factual dispute that should properly be considered by a jury." The court denied defendant's subsequent motion for reconsideration.

On January 21, 2022, the trial court denied defendant's motion for reconsideration and also denied plaintiff's cross-motion for summary judgment requesting the court to determine defendant had a duty to maintain the sidewalk and was liable for the accident. Thereafter, the Township also moved for summary judgment, arguing plaintiff failed to overcome the presumption of immunity under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 ("TCA"). The court denied the motion by order of May 19, 2022.

Defendant moved for summary judgment a second time in November 2023 contending the prior judge failed to make a finding on the meaning of "abutted." Plaintiff cross-moved for partial summary judgment for liability only. The court

denied defendant's motion by its order and written statement of reasons of January 18, 2024, which incorporated the reasoning set forth by the court in its previous rulings. The court also denied plaintiff's cross-motion finding factual issues existed for a jury to determine concerning liability.

Prior to the start of trial, defendant filed a motion in limine wherein it again argued that it did not have a duty to maintain the sidewalk at the place where plaintiff fell. The trial court denied the motion, ruling that: (1) the motion was an untimely attempt to revisit the summary judgment motion; (2) as previously found the sidewalk in question abutted defendant's commercial property, thereby creating a duty on the part of defendant, but there was an issue of fact as to whether only one or both of the defendants had been negligent in maintaining the sidewalk; (3) the common definition of "abutting" made it clear that the at-issue portion of the sidewalk abutted defendant's commercial property; (4) the dicta from our Supreme Court in Stewart v. 104 Wallace Street, Inc., 87 N.J. 146 (1981), referencing various Pennsylvania cases did not incorporate the "in front of" language; and (5) it would be incongruous to find a party was responsible for inspecting only a portion of a large slab of concrete.

During trial, the jury heard testimony from multiple witnesses regarding the division of responsibility for the sidewalk maintenance. DiNizo testified the

8

Township handled maintenance of only asphalt sidewalks adjacent to municipal buildings and schools. He stated property owners and businesses were required to inspect and maintain concrete or paver sidewalks fronting their properties according to Township ordinance. He testified the Township was responsible for removing trees that created hazardous sidewalk conditions, but owners were to repair the resultant sidewalk issues and the Township did not proactively inspect concrete sidewalks but responded to complaints. Although admitting the Township managed the asphalt in Tarquin's Alley, DiNizo maintained defendant was responsible for repairing the encroaching concrete slabs, even those extending into the Tarquin's Alley.

Yu also testified she was of the belief that defendant's maintenance duties only extended to the sidewalk within their property lines. Yu testified she inspected for safety issues at least twice monthly, sometimes beyond her property lines as a courtesy, including leaf and snow removal. Yu also stated the Township removed a tree from the paver area and defendant replaced the brick pavers in that area including the pavers within Tarquin's Alley. Yu admitted part of the slab at issue was on defendant's property and that the joint by the alley was not level, but she did not consider it defendant's responsibility because it was outside the property line.

A-2344-23

Plaintiff's liability expert, licensed professional engineer James Kennedy, testified the lip that caused the fall significantly exceeded industry standards for planar sidewalk conditions and was unsafe, and opined defendant should have addressed it. Kennedy stated the offending portion, though partly off the property line, abutted defendant's property and thus fell under its maintenance obligations. He found no conflict between the "in front of" language in the Township's ordinance and state law regarding "abutting" sidewalks. Kennedy reasoned that Tarquin's Alley, as a public way, rendered defendant's property a corner lot with two frontages—thus maintaining the hazardous area in Tarquin's Alley was still defendant's responsibility. He did not opine on the Township's liability, acknowledging those issues were commonly addressed only after receiving reports of defects and that commercial owners were better positioned to notice tripping hazards.

Plaintiff testified to the consequences of her injuries, noting chronic pain, persistent limitations in wrist and shoulder function, and difficulty performing daily and occupational tasks. She recounted her prior active lifestyle and the loss of ability to run, exercise, and fully participate in life events. Nonetheless, she did not miss any work or request accommodations at her job.

A-2344-23

Plaintiff's damages testimony was provided by Dr. Joseph Barmakian, an orthopedist, who confirmed multiple injuries, including a comminuted intraarticular right wrist fracture, frozen shoulder, trigger thumb, and posttraumatic arthritis. He testified that, as a result of the fall, plaintiff had permanent impairments—malunion of the wrist, pain, reduced range of motion, nerve irritation, and decreased grip strength, all with implications for future worsening arthritis. Dr. Barmakian recommended continued treatment, including potential further surgery, physical therapy, and injections.

Defendant's medical expert, Dr. Michael Bercik, an orthopedic surgeon, testified plaintiff had achieved maximal benefit from treatment, that further surgery was unnecessary, and opined her wrist impairment was mild, she did not have a frozen shoulder, and her trigger finger was not attributable to her fall, although he did acknowledge the permanence of the injuries and resultant symptoms in her wrist.

After plaintiff rested, defendant, the Township and plaintiff all moved for directed verdicts. Relying upon Township Ordinance §15-2.8, defendant argued plaintiff did not fall in front of defendant's commercial property and defendant had no obligation to address a sidewalk hazard that was four feet off its property line. The trial court denied all but the Township's motion, which it reserved.

11

In denying defendant's motion, the trial court first found that the Township ordinance did not supersede the decision of our Supreme Court in <u>Stewart</u> wherein the Court determined the owners of commercial property liable for failing to maintain the sidewalks that abutted their properties. In the instant case, the court deemed it clear that the sidewalk in question was an abutting sidewalk.

In this regard, the trial court noted: (1) while defendant had offered no expert testimony in this case, plaintiff's expert had testified that defendant's building had frontage on both East Second Street and down Tarquin's Alley, such that the portion of the concrete slab that was not directly in front of defendant's building but still abutted it; (2) this single concrete slab, which encroached into Tarquin's Alley, as DiNizo confirmed, had not been installed by the Township, but by a prior owner of defendant's property; and (3) records reflected that a predecessor-in-title to defendant's property had transferred to the Township the property that became Tarquin's Alley.

The trial court concluded its decision by stating:

> Abutting has a definite definition to it. It means abutting up to. It doesn't mean on your property. It means abutting to your property. Here is your property line. Abutting means abutting up to it. Otherwise, if . . . you read abutting as . . . abutting up to it and in

front of it, that eliminates the word abutting. It gives it no meaning.

The Supreme Court did not use the . . . phrase abutting and in front of in <u>Stewart</u>. It used abutting. In reference to the Pennsylvania decision in court is dicta [sic]. The Supreme Court could have clearly said, if it had wanted to, that sidewalks abutting and in front of commercial properties. It doesn't use that phrase. Courts, since then, have used abutting. They've been clearly, clearly upheld.

After defendant and the Township presented their cases, all parties presented summations and the trial court charged the jury. After their deliberation, the jury returned verdicts determining both defendants liable and awarded a gross sum of $1,200,000 to the plaintiffs, apportioning liability sixty percent to defendant Lince, thirty percent to the Township, and ten percent to the plaintiff. Concerning the Township's motion, which was reserved by the court, after hearing further argument, the court granted the Township's directed verdict motion, dismissed the Township with prejudice and molded the judgment to increase defendant's liability to ninety percent pursuant to N.J.S.A. 2A:15-5.3 because the jury's initial verdict determined defendant's percentage of liability to be sixty percent. Final judgment was entered on April 15, 2024, for $1,218,748.81, adding pre-judgment interest. Defendant moved for a new trial, which was denied. The trial court stayed the judgment pending this appeal.

13

On appeal, defendant contends the trial court erred in denying its motions for summary judgment and its motion for a directed verdict. Defendant maintains it did not have a duty to maintain the area of plaintiff's fall where the alleged defect was located. Defendant also asserts the damages award should be vacated as excessive. Defendant, joined by plaintiffs in their cross-appeal, also contend the trial court erred in granting the Township's dismissal motion.

II.

A.

We review a summary judgment determination de novo, "applying the same standard as the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022); Stewart v. N.J. Tpk. Auth./Garden State Parkway, 249 N.J. 642, 655 (2022). Under this standard, summary judgment will be granted when "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

In reviewing a motion for involuntary dismissal under Rule 4:37-2(b) or a motion for judgment under Rule 4:40-1, we apply the same standard that governs the trial courts. ADS Assocs. Grp. v. Oritani Sav. Bank, 219 N.J. 496,

14

511 (2014). Both motions are governed by "the same evidential standard: 'if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied[.]'" Verdicchio v. Ricca, 179 N.J. 1, 30 (2004) (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000)).

The motion should only "be granted where no rational juror could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action." Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 197 (2008). We review de novo a trial court's decision on these motions also, applying the same standard as the trial court. Ibid.

Prior to 1981, the owner of a commercial property was not liable for the condition of a sidewalk abutting their property when that condition was due to the "action of the elements or by wear and tear incident to public use." Padilla v. Young Il An, 257 N.J. 540, 548-50 (2024) (quoting Yanhko v. Fane, 70 N.J. 528, 532 (1976)). This rule was overruled by our Supreme Court in Stewart, 87 N.J. at 149.

In Stewart, the plaintiff left the defendant's tavern, walked a short distance, and fell on the sidewalk abutting an adjacent vacant lot, which the

defendant also owned. 87 N.J. at 149-50. Plaintiff suffered injuries in the fall, which he alleged were caused by the sidewalk's seriously dilapidated condition. Id. at 150. The Stewart Court held that "commercial landowners are responsible for maintaining in reasonably good condition the sidewalk abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." Id. at 157. The Court continued:

> Although we recognize that the "no liability" rule remains the law in the majority of jurisdictions . . . we prefer to apply the rule of our neighboring state to cases involving commercial property. In Pennsylvania, the rule has long been that it "is the primary duty of property owners along a street to keep in proper repair the sidewalk in front of their respective properties." Mintzer v. Hogg, 192 Pa. 137, 144 . . . (1899); accord, Nash v. Atlantic White Tower System, Inc., 404 Pa. 83 . . . (1961); Breskin v. 535 Fifth Ave., 381 Pa. 461 . . . (1955); Green v. Borough of Freeport, 218 Pa. Super. 334 . . . (1971); see generally Annot., 88 A.L.R. 2d at 348-52. See also Lewis v. City of Bluefield, 48 F.R.D. 435, 438 (S.D.W.Va. 1969) (under West Virginia law, violation by abutting property owners of ordinance requiring them to maintain sidewalks in good repair gives injured pedestrians cause of action against property owner); accord, Maxey v. City of Bluefield, 151 W.Va. 302 . . . (1966).
>
> [Ibid.]

The duty for commercial owners to maintain sidewalks "flows from the economic benefit that a commercial landowner receives from the abutting

sidewalk and from the landowner's ability to control the risk of injury." Kuzmicz v. Ivy Hill Park Apartments, Inc., 147 N.J. 510, 518 (1997).

On appeal, defendant reiterates its arguments previously asserted to the trial court, arguing it owed no duty to plaintiff as her accident did not occur in front of its commercial property. Defendant contends the Stewart Court equated "abutting" with "in front of," as evidenced by its reference to a number of Pennsylvania cases that held commercial property owners are liable for injuries sustained as a result of dangerous conditions in "front" of their buildings. Defendant contends the trial court improperly expanded the holding in Stewart because, in this matter, plaintiff did not fall in front of its property. We are unpersuaded.

"Abut" is defined by Merriam-Webster Dictionary as "to border on: to touch along an edge."[2] We concur with the trial court's finding that there would be no need for the Stewart Court to have used the term "abutting" if it only meant "in front of." Defendant does not dispute the raised portion of the sidewalk was in an area that abutted its commercial property on the Tarquin's Ally side. Moreover, the record contains substantial, credible evidence that defendant had

---

[2] Merriam-Webster's Dictionary, www.merriam-webster.com/dictionary/abut (last visited Feb. 16, 2026).

a duty to maintain the area of plaintiff's fall, including (1) the unrebutted opinion of Kennedy that defendant's commercial building abutted the area of the fall and also had frontage on both East Second Street and Tarquin's Alley; and (2) defendant replaced the brick pavers outside of its property line and within Tarquin's Alley, showing its belief it was required to maintain areas outside its property lines.

Even if we were to consider defendant's contention that the Stewart Court intended "abut" to mean "in front," the Township's Zoning Ordinance defines "frontage" as "the land lying along the right of way line of a street between the street lot lines of a lot." Scotch Plains, N.J., Code §23-1.8. A "lot, corner" is defined in the ordinance as "a parcel of land at the junction of and fronting on two or more intersecting streets." Ibid. (emphasis added). Therefore, the relevant ordinance clearly sets forth that a corner lot, such as defendant's property, has two frontages: one on East Second Street and the other on Tarquin's Alley. We note, on de novo review, this point was supported by the unchallenged expert testimony of Kennedy at trial.

Based on the above legal principles, we determine, as did the trial court, that defendant had a duty to maintain the area of the fall because this area abutted its property as held in Stewart. The area of the fall located near the intersection

of the asphalt, driveway apron, concrete sidewalk and brick pavers, all abutting defendant's property was utilized by patrons who parked in the rear lot and walked on the sidewalk to patronize defendant's business and other businesses on East Second Street. We conclude the trial court did not err in denying defendant's summary judgment motions and its Rule 4:37-2(b) motion.

B.

We now turn to defendant's claim that the jury's damages award was excessive and indicative of its desire to punish defendant, rather than simply compensate plaintiff for her losses. Defendant maintains that a new trial on both liability and damages is warranted because the excessiveness of the award was the result of the trial court's erroneous instruction to the jury that defendant had a duty to inspect and maintain the subject sidewalk area.

Rule 4:49-1 directs the court "shall grant the motion [for a new trial] if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." Jury verdicts should be set aside in favor of a new trial sparingly and only in cases of clear injustice. Dutton v. Rando, 458 N.J. Super. 213, 223-24 (App. Div. 2019).

A jury's verdict, including an award of damages, "is cloaked with a 'presumption of correctness.'"  Cuevas v. Wenworth Group, 226 N.J. 480, 501 (2016) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 598 (1977)).  A trial or appellate court may not disturb a compensatory damages award in the absence of a finding that it is plainly wrong or shocking to the conscience of the court.  Cuevas, 226 N.J. at 485, 501; Baxter, 74 N.J. at 598-99.  In determining whether an award is excessive, a court must view the totality of the evidence in the light most favorable to the plaintiff.  Cuevas, 226 N.J. at 485, 488; Kozma v. Starbucks Coffee Co., 412 N.J. Super. 319, 325 (App. Div. 2010).  The judicial remedy of remittitur can be used to avoid the necessity of a new trial on damages in the case of "a grossly disproportionate damages award, which, if left intact, would constitute a miscarriage of justice."  Cuevas, 226 N.J. at 487, 499; accord Verdicchio, 179 N.J. at 38-39.

The excessiveness of a damages award alone, even if gross, is an insufficient basis for setting aside a jury's verdict as to liability.  Fertile v. St. Michael's Med. Ctr., 169 N.J. 481, 496-98 (2001).  "[P]assion, prejudice, or bias warranting a new trial on liability generally cannot be established merely by the excessiveness of a damages award."  Id. at 499.  Rather, "[t]o justify a new trial

20

on all issues, what is required is trial error, attorney misconduct or some other indicia of bias, passion or prejudice, impacting on the [] verdict." <u>Ibid.</u>

At trial, evidence was presented concerning: (1) the severity of plaintiff's broken wrist; (2) her consequent frozen shoulder and trigger thumb; (3) the surgeries and physical therapy she endured; (4) her reasonable fear of a possible future fusion surgery that would cause permanent total impairment; (5) her past and ongoing mobility issues and pain; and (6) her inability to work as a teacher and engage in physical fitness activities as she did prior to the accident. We conclude the jury's award of damages was in no way shocking when considering the totality of this trial evidence in a light most favorable to plaintiff. For these same reasons, we further conclude the jury award here was not grossly disproportionate to an extent that would constitute a miscarriage of justice requiring remittitur.

C.

We now address defendant and plaintiff's contentions in their appeal and cross-appeal respectively, that the trial court erred in granting the Township's motion for involuntary dismissal pursuant to <u>Rule</u> 4:37-2(b). The Township's motion was made at the close of plaintiff's case. As we previously noted, the

21

trial court reserved decision.[3] After the jury rendered its verdict, the court heard additional argument on the Township's motion considering all the evidence presented by the parties at trial.

The Township contended, as it did in its argument after plaintiff rested, that there was insufficient evidence upon which the jury could have relied to find the Township was liable under the factors of N.J.S.A. 59:4-2. Specifically, it contended: (1) the testimony reflected the existence of a mere tripping hazard, not a dangerous condition; (2) there was no actual or constructive notice because, per DiNizo, the Township did not inspect these particular sidewalks and only performed remedial work when contacted, which was not the case here; (3) the policy of non-inspection was not unreasonable as, per DiNizo, this policy was based on the ordinance requiring commercial property owners to inspect and maintain the sidewalks in front of their establishments; and (4) the actions of the Township were not palpably unreasonable. The Township maintained, at

---

[3] We note, although the record indicates the Township's motion was made pursuant to Rule 4:37-2(b), which does not explicitly permit a trial court to reserve decision, we determine there was no prejudice to any party here because the identical legal standard applies to a motion pursuant to Rule 4:40-1, which permits reservation under Rule 4:40-2 until after a verdict is returned and, further, because the court permitted additional arguments by the parties based on all the evidence adduced at trial.

most, it was guilty of negligent inspection for which it could not be held liable under N.J.S.A. 59:2-6.

Plaintiff and defendant responded there was evidence in the trial record sufficient for the jury to find: (1) the tripping hazard was a dangerous condition; (2) the Township had actual notice of this dangerous condition based upon Yu's testimony; and (3) the Township had constructive notice of this dangerous condition because it had existed for years on the Township's own property and the Township admitted responsibility for maintaining Tarquin's Alley. In opposing the Township's motion, both plaintiff and defendant also emphasized that eight jurors had found the Township's inaction palpably unreasonable and argued that the trial court should not substitute its judgment for that of the jury.

After argument concluded, the trial court granted the Township's motion, first finding it was satisfied that the jury had sufficient evidence to determine the raised sidewalk constituted a dangerous condition that created a substantial risk of injury. The court was not persuaded, however, that there was sufficient evidence for the jury to determine the Township had actual notice of this particular tripping hazard based upon Yu's testimony. The court found the fact that Yu claimed to have previously given notice to the Township of a defect caused by tree roots several feet away did not constitute notice to the Township

A-2344-23

of the condition causing plaintiff to trip. Moreover, the court was satisfied, without elaboration, that there was no evidence of constructive notice in the trial record.

Lastly, the court found even if there had been actual or constructive notice of the alleged dangerous condition, there was no evidence from which the jury could have found the Township's policy of not inspecting sidewalks and responding only to flagged problems was palpably unreasonable. The court emphasized that plaintiff's own expert, Kennedy, testified that this policy was not unreasonable and that he had "no problem with the Township's policy."

The TCA, confers a presumption of immunity "from tort liability [on public entities] unless there is a specific statutory provision imposing liability." Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002) (citing Collins v. Union County Jail, 150 N.J. 407, 413 (1997)). "Under the TCA, immunity is the rule and liability is the exception." Posey v. Bordentown Sewerage Auth., 171 N.J. 172, 181 (2002). Thus, "a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. Cnty. of Essex, 209 N.J. 51, 65 (2012) (quoting Kahrar, 171 N.J. at 3); see also N.J.S.A. 59:2-1(a) ("Except as otherwise provided by [the TCA], a public entity is not liable for an injury, whether such

injury arises out of an act or omission of the public entity . . . ."). Under the TCA, a public entity has a duty of care different from "that . . . owed under the negligence standard." Polzo, 209 N.J. at 76; see also Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 460 (2009).

The TCA allows imposition of tort liability against public entities for injuries caused by conditions of their property but only based on limited circumstances. N.J.S.A. 59:4-2. The foregoing statute imposes tort liability only where it is established: (1) the public entity's "property was in dangerous condition at the time of the injury"; (2) "the injury was proximately caused by the dangerous condition"; (3) "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) "a negligent or wrongful act or omission of [a public] employee . . . created the dangerous condition" or "a public entity had actual or constructive notice of the dangerous condition[.]" Ibid.; see also Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 124-25 (2001). In addition, a public entity is not liable for a dangerous condition of its property "if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." N.J.S.A. 59:4-2.

Pursuant to N.J.S.A. 59:4-3(a), actual notice exists when the defendant had knowledge of the condition and knew or should have known of its dangerous character. Constructive notice exists when the condition existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character. N.J.S.A. 59:4-3(b); see Chatman v. Hall, 128 N.J. 394, 418 (1992) (explaining the length of time during which an alleged dangerous condition existed as well as its alleged size create a reasonable inference that the defendant public entity had either actual or constructive notice of the condition).

The "palpably unreasonable" standard "implies behavior that is patently unacceptable under any given circumstances," Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985), and "'imposes a more onerous burden on the plaintiff.'" Schwartz v. Jordan, 337 N.J. Super. 550, 555 (App. Div. 2001) (quoting Williams v. Phillipsburg, 171 N.J. Super. 278, 286 (App. Div. 1979)); but see Holloway v. State, 125 N.J. 386, 404 (1991) (quoting with apparent approval the opinion of the appellate panel below that palpably unreasonable "does not necessarily mean 'very' negligent, 'grossly' negligent or 'extraordinarily' negligent"). "Whether or not conduct is palpably unreasonable is a jury determination." Estate of Gonzalez v. City of Jersey City, 247 N.J. 551, 576

26

(2021) (citing <u>Henebema v. S. Jersey Transp. Auth.</u>, 430 N.J. Super. 485, 506 (App. Div. 2013)); <u>cf.</u> <u>Estate of Massi v. Barr</u>, 479 N.J. Super. 144, 160 (App. Div. 2024) (citing <u>Polzo v. County of Essex</u>, 209 N.J. 51, 75 n.12 (2012)) (holding in "appropriate circumstances," the question may be decided by the court as a matter of law, as part of a dismissal application).

Based on our de novo review, we conclude the trial court improvidently granted the Township's dismissal motion because sufficient evidence existed in the trial record that supported the jury's determination of liability against the Township when affording all favorable inferences to the non-moving parties.

Initially, contrary to the trial court's findings, the record shows that Kennedy actually did not offer an opinion regarding whether the Township's policy to not proactively inspect concrete sidewalks was not negligent but merely confirmed that it was a common municipal policy. Notwithstanding, while the Township may not have had actual notice of the offending concrete lip, it cannot be overlooked that evidence showed the Township owned and maintained the asphalt roadway and the concrete driveway apron located at the intersection point of Tarquin's Alley and East Second Street. Based on DiNizo's direct testimony; the asphalt and concrete driveway apron portion of Tarquin's Alley also served as a walkway for pedestrians parked in the back lot and for

pedestrians walking on East Second Street; and the plaintiff tripped on the raised sidewalk block that directly touched the asphalt and the concrete driveway apron of Tarquin's alley where it intersection with East Second Street. Evidence adduced at trial also claimed the defect had been in the same condition for approximately three years prior to the plaintiff's fall.

Based on the above evidence, we conclude the jury had sufficient basis to determine the Township was partially liable for plaintiff's injuries. When viewing this evidence in a light most favorable to the non-moving parties, a reasonable jury could find: (1) a dangerous condition existed and it was foreseeable it could cause plaintiff to trip and sustain injuries; (2) the Township had constructive notice of the raised concrete lip because it directly touched at a point where the asphalt and concrete driveway apron met on Tarquin's alley; (3) the Township admitted it owned, inspected and maintained Tarquin's alley since it was a dedicated street, including the asphalt and the concrete driveway apron for approximately three years; (4) with reasonable diligence the Township should have discovered the dangerous condition during its maintenance of both the asphalt and concrete driveway apron of Tarquin's alley directly abutting the raised sidewalk block; (5) the Township had a duty to notify and direct defendant to remediate the condition or remediate the condition itself; (6) the Township's

28

failure to notify defendant of the dangerous condition or remediate the condition itself for at minimum three years was palpably unreasonable; and (7) the condition was the proximate cause of plaintiff's injuries.

We conclude the facts in <u>Maslo v. City of Jersey City</u>, 346 N.J. Super. 346 (App. Div. 2002) cited by the Township are distinguishable from the facts in the present appeal because in <u>Maslo</u> the raised sidewalk in dispute was required to be maintained by ordinance by the private owner and did not directly abut an area owned and maintained by the public entity. As we noted, the raised concrete block directly abutted the Tarquin's Alley right of way, which the Township admitted it was required to maintain. Despite the dangerous condition being present for approximately three years during the time the Township was maintaining Tarquin's Alley, it failed to remediate or notify defendant of the defective condition.

We further point out; from our reading of the trial record, the court instructed the jury under the "Dangerous Condition of Public Property" civil model jury charge. <u>See</u> <u>Model Jury Charges (Civil)</u>, 5.20, "Real Property Negligence" (rev. Jan. 2025). This charge specifically details the requirements a plaintiff must prove to assess liability and damages against a public entity, including the definitions of "constructive notice" and "palpably unreasonable."

29

The court specifically instructed the jury on the above two principles as follows:

> The public entity is considered to have constructive notice if the condition existed for such a long period of time and was so obvious in nature that the public entity, exercising due care, should have discovered the dangerous condition and its dangerous character. In addition, if you find that due to the length of time the dangerous condition was there and the obviousness of the condition, an employee performing his or her job with reasonable care should have discovered the dangerous condition and its dangerous character, then the public entity is assumed to have had constructive knowledge of the condition.
>
> The fifth element is that any measures taken by the public [entity] or its failure to take any measures to address the dangerous condition were palpably unreasonable. That is, the plaintiff must prove that the actions taken by the public entity or the lack of actions to respond to the dangerous condition by either correcting, repairing, remediating, safeguarding, or warning of – was palpably unreasonable. Mere carelessness or [] thoughtlessness or forgetfulness or inefficiency is not enough. The action of the public entity must be more than that. To be palpably unreasonable, the action or inaction must be plainly and obviously without reason or reasonable basis. It must be capricious, arbitrary, or outrageous.

Thereafter, the jury unanimously voted 8-0 that plaintiff proved all elements set forth in Model Civil Jury Charge 5.20 to find comparative negligence of thirty-percent against the Township for causing plaintiffs' injuries.

A-2344-23

We assume the jury understood and followed these instructions. See, e.g., State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019) ("The authority is abundant that courts presume juries follow instructions"). Accordingly, we reverse the trial court's order dismissing the plaintiffs' claims against the Township and remand to the trial court to enter judgment reinstating the jury's verdict.

Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2344-23